United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 5, 2003**

Charles R. Fulbruge III
Clerk

Revised December 29, 2003

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 00-50591

ALFRED CASTELLANO,

Plaintiff-Appellee,

versus

CHRIS FRAGOZO, Etc.; ET AL,

Defendants,

CHRIS FRAGOZO, Individually and in his
Official Capacity as a San Antonio Police Officer;
MARIA SANCHEZ, Individually,

Defendants-Appellants.

Appeals from the United States District Court
for the Western District of Texas

Before KING, Chief Judge, and JOLLY, HIGGINBOTHAM, DAVIS, JONES,
SMITH, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, BENAVIDES,
STEWART, DENNIS, CLEMENT, and PRADO, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Today we examine our uncertain law attending a claim of
malicious prosecution with its undisciplined mix of constitutional
and state tort law. We decide that "malicious prosecution"
standing alone is no violation of the United States Constitution,
and that to proceed under 42 U.S.C. § 1983 such a claim must rest
upon a denial of rights secured under federal and not state law.

Alfred Castellano sought damages for his wrongful conviction of arson, asserting claims under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. Before trial the magistrate judge concluded that alleging the elements of malicious prosecution under Texas law stated a claim, but only under the Fourth Amendment. The trial judge passed over defendants' claim of absolute immunity, accepting their argument that the Supreme Court in *Albright v. Oliver*[1] held that if there is an adequate state tort remedy there can be no claim for a denial of due process, and dismissed all claims under any other constitutional provision. With the Texas law of malicious prosecution now the source for his § 1983 claim, Castellano amended his complaint, dropping his state law claim. A jury returned a substantial award of money damages.

We conclude that the trial court's reading of *Albright*, while clinging to the law of this circuit, simultaneously misread both the Fourth and Fourteenth Amendments. As for the Fourteenth Amendment claims, we reject the trial court ruling that there was no denial of due process, either in its primitive form that § 1983 cannot sustain such a claim, or because the state provides a post-deprivation tort remedy. We hold that a state's manufacturing of evidence and knowing use of that evidence along with perjured testimony to obtain a wrongful conviction deprives a defendant of his long recognized right to a fair trial secured by the Due

---

[1] 510 U.S. 266, 271 (1994).

Process Clause, a deprivation of a right not reached by the *Parratt*[2] doctrine. At the same time, we note that Castellano faces obstacles in pursuing his wrongful conviction claims on remand given that Sanchez and Fragozo enjoy absolute immunity for their testimony at trial and have substantial arguments that their manufacturing of evidence could not have created, without the trial testimony, a wrongful conviction.

Given that the district court dismissed the Fourteenth Amendment claims, albeit erroneously, the verdict cannot be sustained on the Fourth Amendment alone since it rests in part on events at trial - events not protected by the Fourth Amendment. It is not possible to separate the damages awarded for violations of the Fourth Amendment from those awarded for wrongful conviction. Nor can we sustain the verdict because the jury effectively decided the Fourteenth Amendment claim.

We begin by reciting the history of the case. We then examine the development of malicious prosecution as a claim under § 1983 – including the contours of the state law tort, its early development as a federal claim in this circuit, as well as the impact of *Albright v. Oliver*[3] on this circuit's precedent. After examining our own law, we turn to the law of other circuits and conclude that "malicious prosecution" standing alone is no violation of the

---

[2] *Parratt v. Taylor*, 451 U.S. 527 (1981).

[3] 510 U.S. 266 (1994).

3

United States Constitution.  We then return to the case at hand, and in doing so we examine *Albright*, finding no support there for the magistrate judge's ruling that by using the elements of the state tort of malicious prosecution, Castellano's full claim could be tethered to the Fourth Amendment.  We conclude by finding that the verdict cannot be sustained and that the case must be remanded for a new trial.

I

1

All of this stems from a case drawn from the entangled lives of Alfred Castellano, Maria Sanchez, a trusted employee, and Chris Fragozo, a City of San Antonio police officer who did security work for Castellano's chain of fast order restaurants around the city of San Antonio called Fred's Fish Fry.  Castellano worked for his father in starting the business, primarily offering fried catfish and chicken to go.  There were three stores when his father died and eighteen on October 31, 1984, when one of the restaurants, Number 7, burned.  By this time, Castellano's business was prospering and he held a prominent citizen's position on the Fire and Police Civil Service Commission, hearing appeals of police personnel from decisions of the Chief of Police.

Officer Castro, a veteran police officer and member of the Arson Squad, quickly determined that the fire had been intentionally set and was an "inside job."  That it was arson has

never been an issue.  The investigation led to Castellano, largely on the testimony of Maria Sanchez and a tape recording she produced with a recorder supplied by Fragozo.

Castro and his partner took the case to the District Attorney, who prepared and, along with Castro, signed an affidavit.  Castro presented the affidavit to a magistrate judge who issued an arrest warrant.  Castro arrested Castellano, taking him to the police station.  He was released a few hours later after being booked and facing an array of cameras.  A later examining trial found probable cause to proceed.  A grand jury indictment and trial followed. Castellano was convicted in a prominent jury trial by a state court jury in San Antonio and sentenced to five years probation.

Throughout Castellano denied involvement in the arson.  His story was that he fired Maria when she refused to take a polygraph, a company policy when money was missing; that Maria and Fragozo were lovers; and that he had refused to give Fragozo a copy of a police examination Fragozo had to pass for promotion.  Maria's story was that Castellano had sought her help in the arson and she taped conversations with him to protect herself if he did burn the restaurant.

In 1993, on his third habeas attempt, the Texas Court of Criminal Appeals set aside the conviction and remanded the case to the trial court.  The District Attorney then dismissed the case for "lack of sufficient evidence," a predictable outcome given the

5

findings of the state habeas judge adopted by the Texas Court of Criminal Appeals.

The findings included:

Chris Fragozo, a police officer with the City of San Antonio, attempted to enlist Clemencia Jiminez as a witness against Applicant and aided Maria Sanchez in altering the tape recordings offered into evidence. The tapes were altered to appear that the Applicant was admitting to the arson when in fact he had no knowledge of its commission.

Maria Sanchez and Chris Fragozo collaborated together and without their testimony and the altered tapes, there is insufficient evidence to sustain a finding of guilt in this case.[4]

Following the dismissal of charges, Castellano filed suit in the District Court of the 288th Judicial District, Bexar County, Texas, against Sanchez, Fragozo and Castro, in both their individual and official capacities, and the City of San Antonio. Castellano claimed in this § 1983 suit that defendants were guilty of malicious prosecution and had denied him rights secured by the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments.

The case was removed to federal court and referred to a magistrate judge, where it was mired in pretrial proceedings over the next six years. During these proceedings, all defendants, except Castro, Sanchez, and Fragozo, were dismissed. And, critically, the magistrate judge's focus was upon the elements of the Texas law of malicious prosecution as sufficient to state a

---

[4] *Ex parte Castellano*, 863 S.W.2d 476, 479 (Tex. Crim. App. 1993).

6

constitutional violation with little examination of particular violation beyond the conclusion that "malicious prosecution" could proceed only under the Fourth Amendment – but not the Fourteenth. This view simultaneously took out the Fourteenth Amendment and overlooked the limits of the Fourth, as we will explain. The case was tried to a seven-person jury, which returned a verdict awarding $3,000,000 in compensatory damages and $500,000 in punitive damages against Sanchez and Fragozo while exonerating Officer Castro. A divided panel of this court upheld the judgment entered on the verdict, and en banc review was granted.

2

The civil trial was a retrial of the criminal case. In large terms the jury was asked to decide whether Castellano was an arsonist or reasonably believed to be so, or rather, whether he was the victim of a conspiracy between Sanchez and Fragozo, joined by Castro, an ambitious cop. The jury plainly was persuaded that Castellano was the victim of Sanchez and Fragozo, but not Castro.

With only the Fourth Amendment claim left in the case, the trial court instructed the jury:

> Castellano claims that Alfred Castro and Chris Fragozo, while acting under color of law, intentionally violated his constitutional right to due process by maliciously prosecuting him for the criminal offense of arson. Castellano further claims that Maria Sanchez, as an individual, intentionally violated the same constitutional right.

The jury was told that Castellano must prove that

7

[t]he defendants caused or commenced or aided a criminal proceeding against him; the defendants acted without probable cause; the criminal action terminated in his favor; he was innocent of arson; the defendants acted with malice by prosecuting him for arson; [and] he was damaged by the criminal proceeding.

### 3

Fragozo and Sanchez argue here that the judgment against them rests on an impermissible blend of state tort and constitutional rights and that Castellano at best has only a Fourth Amendment claim.

Castellano urges that all damages flow from the initial wrongful arrest and seizure in violation of the Fourth Amendment, a theory of recovery not forbidden by *Albright*; and that all of his claims under the First, Sixth, Eighth, and Fourteenth Amendments were dismissed at the urging of the defendants who did not object to the jury charge, and thus they cannot complain that the trial itself reintroduced Castellano's due process claims, claims that were properly before the jury. As we will explain, we agree that the trial court's instructions were erroneous, although in conformity with existing law of the circuit. Contrary to defendants' contentions, the error was in not allowing the jury to consider fully the claim of wrongful conviction by extruding it through the Fourth Amendment.

### II

### 1

We have been inexact in explaining the elements of a claim for malicious prosecution brought under the congressional grant of the right of suit under 42 U.S.C. § 1983. We are not alone. Other circuits have been facing similar difficulties and share with us a common shortcoming – either not demanding that this genre of claims identify specific constitutional deprivations or struggling in their efforts to do so. This laxness has tolerated claims in which specific constitutional violations are often embedded, but float unspecified, undefined, and hence unconfined inside a general claim of malicious prosecution. Its characteristic weak discipline has permitted the blending of state tort and constitutional principles, inattentive to whether the court is adopting state law as federal law in a process of federal common law decision-making, such as detailing remedial responses to a constitutional deprivation, or whether the court is creating a freestanding constitutional right to be free of malicious prosecution. On examination, the latter appears to rest on a perception that the sum of elements borrowed from state tort law by some synergism is a constitutional right itself – in its best light, that the elements of the state law tort of malicious prosecution, when proved, inevitably entail constitutional deprivation. While sometimes this is so, it is not inevitable, and the price of cutting the tether from constitutional text is too great to permit it to continue.

We are persuaded that we must return to basics. And in doing so we conclude that no such freestanding constitutional right to be

9

free from malicious prosecution exists. This conclusion in turn means that we must insist on clarity in the identity of the constitutional violations asserted. In this effort, we first look at the state law tort of malicious prosecution and then look to the enforcement of constitutional protections enjoyed by persons accused of crimes, all as informed by the decision of the Supreme Court in *Albright v. Oliver*.[5]

2

Despite frequent use of the term "malicious prosecution" to describe a wide range of events attending a filing of criminal charges and even continuing through trials, the tort of malicious prosecution has a relatively narrow and widely accepted definition.

> The tort of malicious prosecution of criminal proceedings occurs when one citizen initiates or procures the initiation of criminal proceedings against an innocent person, for an improper purpose and without probable cause therefor, if the proceedings terminate favorably for the person thus prosecuted.[6]

It signifies that initiation of charges without probable cause lies at the heart of this definition, one that is deployed by state courts throughout the country, including Texas.[7]

3

---

[5] 510 U.S. 266 (1994).

[6] FOWLER V. HARPER ET AL., THE LAW OF TORTS § 4.1 (3d ed. 1996).

[7] *See Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517-18 (Tex. 1997).

In *Shaw v. Garrison*, we recognized a "federal right to be free from bad faith prosecutions" without elaborating on the source of that right.[8]  Twelve years later we held in *Wheeler v. Cosden Oil & Chemical Co.* that "the Fourteenth Amendment imposes a duty on state prosecutors to charge only upon ascertaining probable cause."[9]  Judge Gee's opinion, thoughtful as it was, proved to be a wrong turn – one quickly flagged but which nonetheless stood until *Albright*, ten years later.  *Wheeler's* requirement of probable cause to initiate gave common footing to a right secured by the Fourteenth Amendment to be free of charges initiated without probable cause and the identical duty imposed by the classic common law tort of malicious prosecution. The ability of the *Wheeler* holding to survive Supreme Court scrutiny was questioned in *Brummett v. Camble* because it was based on an implied right rather than a "more textual footing."[10]  But the *Brummett* opinion ventured that a malicious prosecution claim based on the infringement of a specific constitutional guarantee would survive review.[11]  Other pre-*Albright* cases recognized that claims of false arrest, false imprisonment, and malicious prosecution could implicate Fourteenth *and* Fourth Amendment rights "when the individual complains of an

---

[8] 467 F.2d 113, 120 (5th Cir. 1972).

[9] 734 F.2d 254, 260 (5th Cir. 1984).

[10] 946 F.2d 1178, 1181 n.2 (5th Cir. 1991).

[11] *Id.*

11

arrest, detention, and prosecution without probable cause."[12]  None of this court's pre-*Albright* decisions achieved a fit between a claim of malicious prosecution and claims under the Constitution, including the Fourth Amendment.  The Supreme Court in *Albright v. Oliver*[13] defined a starting point.

4

Albright alleged that Officer Oliver instituted a baseless charge against him and gave misleading testimony at a preliminary hearing.[14]  The state court found probable cause to try Albright, but the charges were dismissed prior to trial.[15]  Albright sued under § 1983 claiming the officer "deprived him of substantive due process under the Fourteenth Amendment – his 'liberty interest' – to be free from criminal prosecution except upon probable cause."[16]

Chief Justice Rehnquist's plurality opinion, joined by Justices O'Connor, Scalia, and Ginsberg, held that "it is the Fourth Amendment, and not substantive due process" under which Albright's claim must be judged.[17]  The plurality reasoned that the

---

[12] *Thomas v. Kipperman*, 846 F.2d 1009, 1011 (5th Cir. 1988); *see also Sanders v. English*, 950 F.2d 1152, 1159 (5th Cir. 1992) (same).

[13] 510 U.S. 266 (1994).

[14] *Id.* at 269.

[15] *Id.*

[16] *Id.*

[17] *Id.* at 271.

Fourth Amendment addresses concerns of pretrial deprivations of liberty, and "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'"[18] Noting that Albright's claim was not for a violation of procedural due process or a violation of Fourth Amendment rights, the Court dismissed it and expressed no view on whether his claim would succeed under the Fourth Amendment.[19]

Justices Souter and Scalia each wrote separately to emphasize differences with the plurality, but each agreed that there was no need to look beyond the Fourth Amendment in Albright's case.[20] Justice Ginsburg's separate opinion explained that the Fourth Amendment prohibition on unreasonable seizures could extend to post-arraignment travel restrictions such as those placed on Albright, and thus a Fourth Amendment claim would not accrue until the charges against Albright were dismissed.[21]

---

[18] *Id.* at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

[19] *Id.* at 271, 275.

[20] *Id.* at 286-89 (Souter, J., concurring); *id.* at 275-76 (Scalia, J., concurring).

[21] *Id.* at 277-81 (Ginsburg, J., concurring).

Justice Kennedy, joined by Justice Thomas, agreed that the Fourth Amendment applied to claims of unreasonable seizures, but felt that Albright's claim was for the instigation of the prosecution, not any resulting seizure.[22] He stated that while "due process requirements for criminal proceedings do not include a standard for the initiation of a criminal prosecution," the "Due Process Clause protects interests other than the interest in freedom from physical restraint."[23] Assuming *arguendo* that some of these interests protected by the Due Process Clause include those protected by the common law of torts (such as freedom from malicious prosecution), Kennedy stated that "our precedents make clear that a state actor's random and unauthorized deprivation of that interest cannot be challenged under [§ 1983] so long as the State provides an adequate postdeprivation remedy."[24] Kennedy concluded that because the state provides a cause of action for malicious prosecution, a § 1983 claim is barred under the holding of *Parratt*.[25] Where a state did not provide a tort remedy for

---

[22] *Id.* at 281 (Kennedy, J., concurring).

[23] *Id.* at 283.

[24] *Id.* at 284 (citing *Parratt v. Taylor*, 451 U.S. 527, 535-544 (1981)).

[25] *Id.* at 285-86. Justice Stevens took issue with this interpretation of *Parratt* in his dissent, arguing that *Parratt* only applies to those torts which any person could commit, and "its rationale does not apply to officially authorized deprivations of liberty or property." *Id.* at 313 (Stevens, J., dissenting).

14

malicious prosecution "there would be force to the argument that the malicious initiation of a baseless criminal prosecution infringes an interest protected by the Due Process Clause and enforceable under § 1983."[26]

5

A series of our post-*Albright* decisions evolved into the rule articulated in *Gordy v. Burns*,[27] the decision the panel majority found to be controlling.[28]  *Gordy* holds that "the rule in this circuit is that the elements of the state-law tort of malicious prosecution and the elements of the constitutional tort of 'Fourth Amendment malicious prosecution' are coextensive."[29]  Furthermore, "a plaintiff in a § 1983 malicious prosecution action need establish only the elements of common-law malicious prosecution. . . . [C]ourts must look to the elements of a malicious prosecution claim under the law of the state where the offense was committed."[30]

This holding is the result of persisting uncertainties in precedent accumulating over time.  Judge Barksdale's dissent from the panel majority observes that the post-*Albright* cases failed to

---

[26] *Id.* at 286 (Kennedy, J., concurring).

[27] 294 F.3d 722 (5th Cir. 2002).

[28] *Castellano v. Fragozo*, 311 F.3d 689, 698-99 (5th Cir. 2002).

[29] *Gordy*, 294 F.3d at 725 (citing *Piazza v. Mayne*, 217 F.3d 239, 245 (5th Cir. 2000)).

[30] *Id.* at 726.

distinguish our prior precedent which relied on the Fourteenth Amendment, a position his dissent urges *Albright* called into question.[31]  We add that many of the recent cases fail to note the qualifying language of earlier decisions, which state that malicious prosecution claims implicate the Fourth and Fourteenth Amendments "'when the individual complains of an arrest, detention, and prosecution without probable cause.'"[32]  As we will explain, *Albright* did not speak to the Fourteenth Amendment beyond eschewing reliance upon substantive due process to create a requirement of probable cause to initiate a prosecution, albeit a holding that drained *Wheeler* of precedential force.

To look forward, we first look back to find the trace to *Gordy* that will inform our effort to chart a new path.  *Gordy* relied on *Piazza*,[33] acknowledging that we assumed without deciding that satisfying the Texas state law elements was sufficient.[34]  Similarly, *Gordy* relied on *Evans*,[35] which in turn cites *Brummett* for

---

[31] *See Castellano*, 311 F.3d at 722-24 (Barksdale, J., dissenting).

[32] *Id.* at 722 (quoting *Sanders v. English*, 950 F.2d 1152, 1159 (5th Cir. 1992)).

[33] *See Gordy*, 294 F.3d at 725.

[34] *See Piazza v. Mayne*, 217 F.3d 239, 245 (5th Cir. 2000) ("Piazza asserts on appeal (and Mayne does not dispute) that the requirements of the state law tort and the constitutional tort are the same.  Thus, we assume without deciding that the requirements are coextensive in the context of a § 1983 action.").

[35] *See Gordy*, 294 F.3d at 725.

16

the holding that "malicious prosecution may be a constitutional violation, but only if all of its common law elements are established."[36]  Yet *Brummett* made clear that "the federal courts have repeatedly held that common law and state tort law do not define the scope of liability under § 1983."[37]  The court in *Brummett* did look to the common law elements of malicious prosecution, and out of concern that plaintiffs would relitigate state convictions in federal court, adopted the common law element that the plaintiff show proof of favorable termination of the prosecution.[38]  Similar concerns led the Supreme Court to adopt an analogous element as well.[39]  *Brummett* did not, however, hold that all common law tort elements were required for a federal claim.

Finally, *Gordy* relied on *Kerr*.[40]  *Kerr* states without explanation that the elements for a § 1983 claim of malicious

---

[36] *Evans v. Ball*, 168 F.3d 856, 863 n.9 (5th Cir. 1999) (citing *Brummett v. Camble*, 946 F.2d 1178, 1183 (5th Cir. 1991)).

[37] *Brummett*, 946 F.2d at 1183.

[38] *Id.* at 1183-84.

[39] *See Heck v. Humphrey*, 512 U.S. 477, 484-87 (1994) (holding that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus").

[40] *See Gordy*, 294 F.3d at 725 (citing *Kerr v. Lyford*, 171 F.3d 330 (5th Cir. 1999)).

17

prosecution are those of Texas state law, citing *Hayter v. City of Mount Vernon*.[41] *Hayter* cites *Taylor v. Gregg*,[42] which relies in turn on *Brown v. United States*.[43] As the *Gordy* opinion notes, *Brown* was a Federal Tort Claims Act case, and the FTCA requires the court to look to the law of the place where the alleged tort occurred.[44] In none of the opinions that ultimately rely on *Brown* did we explain why the requirements of the FTCA should dictate the elements of a § 1983 claim.

With hindsight, our precedent governing § 1983 malicious prosecution claims is a mix of misstatements and omissions which leads to the inconsistencies and difficulties astutely pointed to in Judge Barksdale's dissent from the panel opinion and Judge Jones's special concurrence in *Kerr*.[45] We are not alone in this drift. Other circuits have traveled uneven paths as well, and numerous approaches have developed after *Albright*.

6

---

[41] *Kerr*, 171 F.3d at 340 (citing *Hayter*, 154 F.3d 269, 275 (5th Cir. 1998)).

[42] *See Hayter*, 154 F.3d at 275 (citing *Taylor*, 36 F.3d 453, 455 (5th Cir. 1994)).

[43] *Taylor*, 36 F.3d at 455 (citing *Brown*, 653 F.2d 196, 198 (5th Cir. 1981)).

[44] *See Gordy*, 294 F.3d at 726 n.3.

[45] *See Kerr*, 171 F.3d at 342-43 (Jones, J., specially concurring).

18

Our sister circuits take two broad approaches to malicious prosecution claims under § 1983.  The first is to require proof of all common law elements of malicious prosecution, usually based on the law of the state where the offense occurred, as well as proof of a constitutional violation – an approach adopted in various forms by the First, Second, Third, Ninth, and Tenth Circuits.[46]  The second approach views malicious prosecution as unenforceable under § 1983, looking to the common law elements of the tort only as needed to assist the enforcement of analogous constitutional violations - seizures under the Fourth Amendment, for example. This is the view of the Fourth, Seventh, and Eleventh Circuits.[47] The approach of the Sixth Circuit is not clear, as it also has conflicting precedents and has yet to articulate the elements of a § 1983 malicious prosecution claim.[48]  Similarly, the Eighth Circuit's approach is undefined beyond insisting upon a constitutional violation.[49]

---

[46] *See infra* notes 50-67 and accompanying text.

[47] *See infra* notes 68-81 and accompanying text.

[48] *See Thacker v. City of Columbus*, 328 F.3d 244, 258–59 (6th Cir. 2003) (noting that contrary to binding circuit precedent, some panels do not recognize a § 1983 malicious prosecution claim, and stating that the circuit has yet to define the elements of a federal malicious prosecution claim).

[49] *See Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000) ("It is well established in this circuit that an action for malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury." (internal quotations and citations omitted)).

In *Nieves v. McSweeney*, the First Circuit cited four state common law elements it requires for a malicious prosecution claim.[50] But the court then stated that the plaintiff "must show a deprivation of a federally-protected right."[51] The court reasoned that procedural due process cannot be the basis of the claim because Massachusetts provides an adequate remedy, and *Albright* forecloses substantive due process claims.[52] The court "assume[d] without deciding that [a state law] malicious prosecution can, under some circumstances, embody a violation of the Fourth Amendment and thus ground a cause of action under section 1983."[53] Turning to the case at bar, the court acknowledged that while malicious prosecution permits damages for deprivations of liberty pursuant to legal process, the plaintiffs had been arrested without a warrant. Therefore, the plaintiffs failed to allege a seizure which could be part of their malicious prosecution since a

---

[50] 241 F.3d 46, 53 (1st Cir. 2001) (listing (1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice).

[51] *Id.*

[52] *Id.*

[53] *Id.* at 54; *see Britton v. Maloney*, 196 F.3d 24, 28 (1st Cir. 1999) ("We will simply assume, for the purposes of the analysis, that the type of conduct which constitutes a malicious prosecution under state law can sometimes constitute a violation of the Fourth Amendment as well.").

warrantless arrest is not pursuant to legal process.[54] The plaintiffs' post-arraignment restrictions and harms (release on their own recognizance, pending serious criminal charges, sullied reputations, pretrial court appearances, and trial) were not seizures.[55]

The Second Circuit also requires proof of a tort under state common law and an injury caused by a deprivation of liberty guaranteed by the Fourth Amendment.[56] That court has noted that it is "theoretically possible" for a plaintiff to premise a malicious prosecution claim on some other constitutional right, in which case the standard governing that right would determine whether there was a constitutional violation.[57] Like the First Circuit, the Second requires a seizure pursuant to legal process, ruling out warrantless arrests.[58] However, the Second Circuit has found that

---

[54] *Nieves*, 241 F.3d at 54.

[55] *Id.* at 54-55.

[56] *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995) (stating that "the court must engage in two inquiries: whether the defendant's conduct was tortious; and whether the plaintiff's injuries were caused by the deprivation of liberty guaranteed by the Fourth Amendment"); *see also Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997) (quoting *Singer*, 63 F.3d at 116, for the holding that a § 1983 "plaintiff must show conduct that was tortious under state law and that injury was 'caused by the deprivation of liberty guaranteed by the Fourth Amendment'").

[57] *Singer*, 63 F.3d at 116 n.5.

[58] *Id.* at 116-17.

post-arraignment travel restrictions are sufficient to constitute a seizure.[59]

The Third Circuit likewise requires proof of all common law elements, as well as a constitutional violation,[60] but not with certainty. Rather, it has questioned the role of additional common law elements of malicious prosecution: "For instance, if the harm alleged is a seizure lacking probable cause, it is unclear why a plaintiff would have to show that the police acted with malice."[61] However, it has not abandoned this requirement. Like the Second Circuit, post-arraignment restrictions ($10,000 bond, travel restrictions, weekly contact with pretrial services, and attendance at all pretrial hearings) constitute a seizure.[62] Unlike most circuits, the alleged constitutional violation is not limited to a Fourth Amendment seizure, and includes any constitutional violation, including violations of procedural due process (but not

---

[59] *Murphy*, 118 F.3d at 946 ("[W]hile a state has the undoubted authority ... to restrict a properly accused citizen's constitutional right to travel outside of the state as a condition of his pretrial release, and may order him to make periodic court appearances, such conditions are appropriately viewed as seizures within the meaning of the Fourth Amendment.").

[60] *See Donahue v. Gavin*, 280 F.3d 371, 380 n.16 (3d Cir. 2002) (stating that it had remanded a previous § 1983 case because "the district court did not rule on whether [the plaintiff] had satisfied the common law elements of a malicious prosecution claim").

[61] *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 n.6 (3d Cir. 1998).

[62] *Id.* at 222.

22

substantive due process),[63] a distinction that will draw our attention in this case.

The Tenth Circuit is more restrictive, requiring proof of all common law elements, but limiting the additional constitutional violation to a violation of "the Fourth Amendment's right to be free from unreasonable seizures."[64] The court noted that where an independent and untainted determination of probable cause is made at the arraignment, the post-arraignment detention is not a seizure even if the arrest was illegal.[65]

In the Ninth Circuit the state tort of malicious prosecution alone is not sufficient for a § 1983 claim if there is a state remedy available, but there is an exception if the defendant had the intent "to deprive a person of equal protection of the law or otherwise to subject a person to a denial of constitutional

---

[63] *See Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 792 (3d Cir. 2000) (citing *Torres v. McLaughlin*, 163 F.3d 169 (3d Cir. 1998)).

[64] *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996) (stating that "our circuit takes the common law elements of malicious prosecution as the 'starting point' ... but always reaches the ultimate question ... whether the plaintiff has proven a *constitutional* violation").

[65] *Id.* at 1563-64.

23

rights."[66]  The plaintiff must satisfy the state law elements and the element of purpose to deprive a constitutional right.[67]

Adopting the second of the two broad approaches, the Fourth Circuit in *Lambert v. Williams* held:

> [T]here is no such thing as a "§ 1983 malicious prosecution" claim.  What we termed a "malicious prosecution" claim . . . is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution--specifically, the requirement that the prior proceeding terminate favorably to the plaintiff.  It is not an independent cause of action.[68]

Interestingly, the Fourth Circuit cites cases from the First, Second, and Tenth Circuits as taking the same approach it adopted,[69] pointing to the subtlety of the difference between the two approaches.  The difference, nonetheless central, is that when the constitutional violation is the focus, only those common law elements which are consistent with enforcement of a constitutional right are incorporated, and those that are not are rejected.

For instance, the Fourth Circuit has rejected the common law malice requirement, "since the reasonableness of a seizure under

---

[66] *Poppell v. City of San Diego*, 149 F.3d 951, 961 (9th Cir. 1998) (citing *Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir. 1987)).

[67] *Id.* at 962-63.

[68] 223 F.3d 257, 262 (4th Cir. 2000) (internal citations omitted).

[69] *Id.* at 261 (citing *Britton v. Maloney*, 196 F.3d 24, 28-29 (1st Cir. 1999);  *Murphy v. Lynn*, 118 F.3d 938, 946 (2d Cir. 1997); *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996)).

24

Fourth Amendment jurisprudence should be analyzed from an objective perspective."[70] On the other hand, that court has incorporated the requirement of a favorable termination, not only as a prerequisite to recovery, but also to establish the time of accrual.[71] The court stated that incorporating common law elements was not done to create a new cause of action, but rather was "in recognition of the fact that § 1983 was designed to create a 'special species of tort liability.'"[72] It pointed to several Supreme Court cases where common law elements were incorporated into § 1983 claims.[73]

The Seventh Circuit, like the Fourth, does not recognize a federal claim of malicious prosecution: "[I]f a plaintiff can establish a violation of the fourth (or any other) amendment there

---

[70] *Id.* at 262 n.2 (internal quotations marks omitted).

[71] *Id.* at 262 n.3. As mentioned, this court took a similar approach by adopting only this element in *Brummett v. Camble*, 946 F.2d 1178, 1183 (5th Cir. 1991), as did the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994).

[72] *Lambert*, 223 F.3d. at 262 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)).

[73] *Id.* (citing *Heck*, 512 U.S. at 483-84 (finding a legality of confinement claim analogous to the malicious prosecution tort, and incorporating into the federal claim the common law prerequisite of termination of the prior criminal proceeding in favor of the accused); *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 305-06 (1986) (incorporating common law damages principles into a § 1983 claim and finding that the abstract "value" of constitutional rights cannot form the basis of compensatory relief); *Carey v. Piphus*, 435 U.S. 247, 253-67 (1978) (structuring compensatory damages principles under § 1983 by reference to common law); *Imbler*, 424 U.S. at 422-29 (incorporating the common law principle of prosecutorial immunity)).

is nothing but confusion to be gained by calling the legal theory 'malicious prosecution.'"[74] Instead, "[c]laims of malicious prosecution should be analyzed ... under the language of the Constitution itself and, if state law withholds a remedy, under the approach of *Parratt*," whereby the adequacy of a state law remedy bars a due process claim.[75] The Seventh Circuit explicitly rejected its earlier holdings which required the state law elements of the tort to be satisfied, stating that "whatever scope malicious prosecution may have as a constitutional tort after *Albright*, it does not depend on state law in this way."[76] It had no occasion to consider which common law tort elements of malicious prosecution it would incorporate. Finally, it recognized that Newsome had stated a due process claim "if the prosecutors withheld material exculpatory details."[77]

The Eleventh Circuit takes an approach quite similar to that of the Fourth Circuit. In *Whiting v. Traylor*, the court stated that labeling a § 1983 claim as a malicious prosecution claim

> can be a shorthand way of describing a kind of legitimate section 1983 claim: the kind of claim where the plaintiff, as part of the commencement of a criminal proceeding, has been unlawfully and forcibly restrained

---

[74] *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001).

[75] *Id.*

[76] *Id.* at 750.

[77] *Id.* at 752 (citing *Brady v. Maryland*, 373 U.S. 83 (1963)).

26

in violation of the Fourth Amendment and injuries, due to that seizure, follow as the prosecution goes ahead.[78]

The court then concluded that "[i]n determining when a section 1983 claim accrues (as well as the elements which must be pled to state a claim) we must seek help from the common law tort which is most analogous to the claim in the case before us."[79]   In situations where the alleged seizure was pursuant to legal process the tort of malicious prosecution is most analogous, and so the court incorporated the favorable termination element whereby the claim does not accrue until the prosecution ends in the plaintiff's favor.[80]   In addition, the court noted that under analogous malicious prosecution principles, injuries caused by the unlawful seizure may include those associated with the prosecution.[81]

## III

We now turn to *Albright*, which, as important as it is, held far less than is now being claimed.  First, we remind that the charges in *Albright* were dismissed after petitioner's arrest and release on bail.  There was no further prosecution.  Chief Justice

---

[78] 85 F.3d 581, 584 (11th Cir. 1996).

[79] *Id.* at 585 (citing *Heck v. Humphrey*, 512 U.S. 477 (1994)).

[80] *Id.; see also Wood v. Kesler*, 323 F.3d 872, 881-82 (11th Cir. 2003) (discussing incorporation of both state and federal common law tort elements).

[81] *Id.* at 586 & n.10 (noting that there may be causation problems if an independent prosecutor's actions broke the causal link between the defendant officer's behavior and the plaintiff's injury).

Rehnquist, in his opinion for the Court, precisely stated the claim presented:

> Petitioner's claim before this Court is a very limited one. He claims that the action of respondents infringed his substantive due process right to be free of prosecution without probable cause. He does not claim that Illinois denied him the procedural due process guaranteed by the Fourteenth Amendment. Nor does he claim a violation of his Fourth Amendment rights, notwithstanding the fact that his surrender to the State's show of authority constituted a seizure for purposes of the Fourth Amendment.[82]

The Court was also precise in what it was holding:

> Where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."[83]

*Albright* rejected the contention that the initiation of criminal proceedings without probable cause is a violation of substantive due process, holding that petitioner must look to the explicit text of the Fourth Amendment as a source of protection for the "particular sort of government behavior" at issue. To the point, causing charges to be filed without probable cause will not without more violate the Constitution. So defined, the assertion of malicious prosecution states no constitutional claim. It is equally apparent that additional government acts that may attend

---

[82] *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

[83] *Id*. at 273 (quoting *Graham v. Conner*, 490 U.S. 386, 395 (1989)).

the initiation of a criminal charge could give rise to claims of constitutional deprivation.

The initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection - the Fourth Amendment if the accused is seized and arrested, for example, or other constitutionally secured rights if a case is further pursued.  Such claims of lost constitutional rights are for violation of rights locatable in constitutional text, and some such claims may be made under 42 U.S.C. § 1983. Regardless, they are not claims for malicious prosecution and labeling them as such only invites confusion.

## IV

### 1

One matter should here be put to rest.  Under the unique circumstances of this case, we apply an abuse of discretion standard, rather than plain error.[84]  We ask "whether the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of the law applicable to the factual issues confronting them."[85]  It is true that defendants did not object to the jury charge beyond urging their earlier motions for judgment as a matter of law.[86]  It is

---

[84] *United States v. Daniels*, 281 F.3d 168, 183 (5th Cir. 2002).

[85] *Id*. (internal quotations and citations omitted).

[86] We iterate our longstanding view that failure to object to a jury charge ordinarily limits review to plain error.  *See, e.g.,*

29

equally true that defendants did object to allowing the jury to consider wrongful conviction as a claim under the Fourth or Fourteenth Amendment, making their legal position clear to the magistrate judge both by their motions for judgment as a matter of law, as well as by explicit renewal of those motions at the charge conference in response to the judge's invitation to lodge any objections to the proposed charge. Moreover, defendants appeal from the district court's denial of judgment as a matter of law, and its rejection of the contention that the Fourth Amendment would not support claims arising from the trial.

2

The magistrate judge in this case, facing the daunting task of attempting to locate a regression line in our decisions, dismissed all claims except claims for violation of the Fourth Amendment. In doing so he read *Albright* broadly in concluding that the Fourth

---

*Tompkins v. Cyr*, 202 F.3d 770, 783 (5th Cir. 2000); *Highland Ins. Co. v. Nat'l Union Fire Ins. Co.*, 27 F.3d 1027, 1032 (5th Cir. 1994); *Farrar v. Cain*, 756 F.2d 1148, 1150 (5th Cir. 1985). Rule 51 states that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." "The purpose of this rule is to allow the trial court to correct any error before the jury begins its deliberation." *Farrar*, 756 F.2d at 1150. Nevertheless, given the unusual procedural history of this case, that the jury was charged contrary to the law of the case, and the fact that the nature of the defendants' continued objections to submitting the case to the jury went to the heart of this error, an abuse of discretion standard is appropriate.

30

Amendment afforded an adequate constitutional predicate for all of the defendants' conduct through trial – or none of it.

In the effort to rest the entire trial upon the Fourth Amendment, the trial judge instructed the jury that to prove he was maliciously prosecuted, Castellano must establish by a preponderance of the evidence each of the following:

> One, the defendants caused or commenced or aided a criminal proceeding against him; two, the defendants acted without probable cause; three, the criminal action terminated in his favor; four, he was innocent of arson; five, the defendants acted with malice by prosecuting him for arson; and six, he was damaged by the criminal proceeding.

The trial court further cabined the claims by instructing that:

> A person's failure to fully and fairly disclose all material information and knowingly providing false information to the prosecutor are relevant to the malice and causation elements of a malicious prosecution claim but have no bearing on probable cause.

This instruction is a direct quotation from a decision of the Texas Supreme Court stating the elements of a claim of malicious prosecution under state law.[87] It is a vivid example of the hazards of blending state tort law with federal law in an undifferentiated way. The Fourth Amendment of the United States Constitution cannot be circumscribed by state tort law, yet this is the practical effect of this instruction, in that if Fragozo were acting under color of state law in providing the false information, there would be no probable cause. It neatly excised Castellano's claim that

---

[87] *See Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 519 (Tex. 1997).

31

the falsity of the tapes and testimony furnished by Sanchez and Fragozo was attributed to the prosecutors because Fragozo acted under color of state law and hence denied Castellano due process, just as the Texas Court of Criminal Appeals had concluded in vacating his conviction.[88] Locating the state elements of malicious prosecution under the Fourth Amendment did not remove the trial events from the case; at the same time, it fell short of putting the Fourteenth Amendment back in because it limited the jury's use of evidence of fabricated evidence and perjured testimony to its resolution of the issues of malice and causation. The instruction also assumed that initiating a criminal case without probable cause denies a constitutional right, contrary to *Albright*, and that defendants' testimony at trial could supply the causal nexus between the Fourth Amendment and the claim of wrongful conviction.

As we will explain by the markers of the new path we define today, this reading of the Fourth and Fourteenth Amendments was deeply flawed. It swept too wide in two directions: simultaneously holding that *Albright* closed the door to any claim of a deprivation

---

[88] *Ex parte Castellano*, 863 S.W.2d 476, 485 (Tex. Crim. App. 1993) ("Fragozo acted under color of law and was, therefore, a member of the prosecution team in the investigation of the instant case and as such his knowledge of the perjured testimony was imputable to the prosecution."). Castellano went to trial on his Third Amended Complaint. There he continued his allegations that Ed Sargologos, the district attorney who prosecuted the case and who was earlier dismissed from the case on immunity grounds, knowingly used the manufactured and perjured testimony and withheld that fact from the defendant.

of due process and that the protections of the Fourth Amendment extended to events at trial.

The manufacturing of evidence and the state's use of that evidence along with perjured testimony to obtain Castellano's wrongful conviction indisputably denied him rights secured by the Due Process Clause. They were not properly dismissed on the basis that no claim was stated, or upon the confusing assertion that the Fourteenth Amendment will not support a claim for "malicious prosecution," another example of the uncertainty accompanying the use of the term malicious prosecution without lifting up the constitutional claims. Defendants pressed the absolute immunity of witnesses in their motions for summary judgment, but the magistrate judge did not reach the contention, electing to accept the erroneous contention that under *Albright* there could be no denial of due process if there was an adequate state tort remedy. At the same time, the magistrate judge determinedly applied holdings of this court that malicious prosecution had the same elements whether the claim was asserted under state tort law or § 1983. To assist in our explanation, we will unpack the ruling of the magistrate judge, turning first to the dismissal of all claims under the Fourteenth Amendment.

3

We cannot agree that the claims under the Fourteenth Amendment were properly dismissed because there was no deprivation of due

33

process that can support a claim for damages under 42 U.S.C. § 1983. This view rests on two arguments. First, that the specific constitutional rights guiding a criminal trial spend their force in assuring a fair trial, and, in its most primitive form, that they cannot support an action under 42 U.S.C. § 1983. Second, that a state remedy in tort to compensate for the injury is an adequate post-deprivation response and hence there was no denial by the state of the process secured by the Fourteenth Amendment.[89]

4

Turning first to the very role of § 1983 in enforcing constitutional rights, the Supreme Court has made clear that Congress created a species of tort liability with § 1983.[90] As the court observed in *Cary v. Piphus*:

> [O]ver the centuries the common law of torts has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights. These rules, defining the elements of damages and the prerequisite for their recovery, provide the appropriate starting point for the inquiry under § 1983 as well.[91]

The substantial body of law developing the immunity to liability of various players in criminal trials rests on the implicit acceptance of the draw of § 1983 upon principles of tort

---

[89] *See, e.g.*, *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001).

[90] *Memphis Community Sch. Dist. v. Stachura,* 477 U.S. 299, 305 (1986).

[91] 435 U.S. 247, 257-58 (1978).

law to compensate for injury suffered in the loss of constitutional rights.[92] We find no reasoned basis for concluding that § 1983 is never available to remedy injuries wrought by a denial of due process. The countervailing interests of law enforcement have been weighed in the judicial development of the immunity doctrine, not in somehow sidestepping the congressional command of § 1983.

5

Nor is there a serious suggestion that the *Parratt* doctrine is applicable to Castellano's claim that the manufacturing of evidence and use of perjured testimony at trial leading to his wrongful conviction denied him due process.[93] *Albright*, in forbidding the deployment of substantive due process to police state actors' conduct that was governed directly by particular constitutional provisions, makes no such suggestion.

In his concurring opinion in *Albright*, Justice Kennedy, joined by Justice Thomas, made clear that in his view Albright's due process claim concerned only the "malicious initiation of a baseless criminal prosecution," rather than an unlawful arrest or events at trial leading to a wrongful conviction, since there was

---

[92] *See, e.g.*, *Imbler v. Pachtman*, 424 U.S. 409 (1976).

[93] Before trial defendants even urged that Fourth Amendment claims should be dismissed because there was an adequate state remedy.

no trial.[94]  He noted that the Due Process Clause protects interests "other than the interest in freedom from physical restraint," and assumed *arguendo* that "some of the interests granted historical protection by the common law of torts (such as the interests in freedom from defamation and malicious prosecution) are protected by the Due Process Clause."[95]  However, he also noted that even if malicious initiation of charges was protected by the Due Process Clause, such a claim would be barred: "[O]ur precedents make clear that a state actor's random and unauthorized deprivation of that interest cannot be challenged under 42 U.S.C. § 1983 so long as the State provides an adequate postdeprivation remedy."[96]

That no other justices joined this writing aside, Justice Kennedy's opinion carefully distinguished the claim in *Albright* of malicious initiation of charges from those cases where the Court found that a criminal rule or procedure violated the fundamental principles of due process.  He stated that Albright's claim thus

> differs in kind from *In re Winship*, and the other
> criminal cases where we have recognized due process
> requirements not specified in the Bill of Rights.  The
> constitutional requirements we enforced in those cases
> ensured fundamental fairness in the determination of
> guilt at trial.  See, *e.g., Mooney v. Holohan*, 294 U.S.
> 103, 112, 55 S.Ct. 340, 341, 79 L.Ed. 791 (1935) (due
> process prohibits "deliberate deception of court and

---

[94] *Albright v. Oliver*, 510 U.S. 266, 281 (1994) (Kennedy, J., concurring).

[95] *Id.* at 283-84.

[96] *Id.* at 284.

36

jury" by prosecution's knowing use of perjured testimony).[97]

This qualification makes sense. Unquestionably, the *Parratt* principle is important in the effort to find principled limits to § 1983's reach into the tort fountain. At the same time, the court has recognized that its medicine can be too strong. Justice Kennedy explained its contraindications, observing that

> courts, including our own, have been cautious in invoking the rule of *Parratt.* That hesitancy is in part a recognition of the important role federal courts have assumed in elaborating vital constitutional guarantees against arbitrary or oppressive state action. We want to leave an avenue open for recourse where we think the federal power ought to be vindicated,[98]

a reservation also expressed in *Monroe v. Pape*'s reading of § 1983 as supplementary to state remedies for constitutional injury.[99] This caution also finds expression in Justice Kennedy's statement that a claim of malicious initiation of criminal proceedings "differs in kind" from claims that implicate "fundamental fairness in the determination of guilt at trial"[100] – claims in which the federal power ought to be vindicated. The concurring opinion of Justice Kennedy, joined by Justice Thomas, expresses the view that *Parratt* can brake the spinning of new constitutional strictures

---

[97] *Id.* at 283 (some citations omitted).

[98] *Id.* at 284-85 (citations omitted).

[99] 365 U.S. 167 (1961).

[100] *Albright*, 510 U.S. at 283.

37

upon the trial of criminal cases from a blend of state tort law and substantive due process, a principle running through *Albright*.

At their most fundamental level, the values sought to be vindicated here are core commands of our United States Constitution – undiluted and unblurred by any blend of state tort law that would either enhance or diminish its force.  Unlike defamation and malicious prosecution, this constitutionally secured right of an accused in a criminal case was not seeded in the common law of tort where duties are the product of judicial choice with no roots in the value choices of our organic law.

We need not agree with the Seventh Circuit's statement that Justice Kennedy's concurring opinion is the holding of *Albright*[101] to agree that there are fundamental rights, albeit few in number, secured by due process that differ in kind from those at issue in *Albright* and which are beyond the reach of *Parratt*.  Justice Stevens made the point as well, observing, "[e]ven if prescribed procedures are followed meticulously, a criminal prosecution based on perjured testimony ... simply does not comport with the requirements of the Due Process Clause."[102]  This is no more than the line drawn by the *Parratt* line of cases and the handful of cases decrying conduct so destructive of a fair trial that it

---

[101] *See Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001).

[102] *Albright*, 510 U.S. at 300 (Stevens, J., dissenting).

38

cannot be justified by procedures.[103]  As Chief Justice Rehnquist put it in *Daniels*, the Due Process Clause protects against arbitrary acts of government by promoting fairness in procedure and "by barring certain government actions regardless of the fairness of the procedures used to implement them."[104]

6

As we have indicated, we find the reasoning employed in dismissing Castellano's due process claims flawed.  Castellano's contention that the manufacturing of evidence and knowing use of perjured testimony attributable to the state is a violation of due process is correct.[105]  Nevertheless, on remand Castellano will face the well-established rule that prosecutors and witnesses, including police officers, have absolute immunity for their testimony at trial.[106]  Courts have also held that non-testimonial pretrial actions, such as the fabrication of evidence, are not within the scope of absolute immunity because they are not part of the trial.[107]  Thus, while Castellano's due process claims are not

---

[103] *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990); *Daniels v. Williams*, 474 U.S. 327, 331 (1986); *Parratt v. Taylor*, 451 U.S. 527 (1981).

[104] *Daniels*, 474 U.S. at 331.

[105] *See Mooney v. Holohan*, 294 U.S. 103, 112, (1935).

[106] *See Buckley v. Fitzsimmons*, 509 U.S. 259, 269-70 (1993); *Briscoe v. LaHue*, 460 U.S. 325, 334-36 (1983).

[107] *See Buckley*, 509 U.S. at 275-76.  Defendants cannot shield any pretrial investigative work with the aegis of absolute immunity

properly rejected by the principles of *Albright* and *Parratt*, whether they survive the absolute immunity given witnesses in a criminal trial or whether the fabrication of the tapes could have been a legally sufficient cause of the wrongful conviction, we leave to the district court on remand.[108]

7

Castellano attempts to salvage his verdict by contending that the violation of the Fourth Amendment supports the verdict because it was the direct cause of all that followed.

In her concurring opinion in *Albright*, Justice Ginsburg articulated a theory that gave a broad reach to seizure under the Fourth Amendment – suggesting that various constraints such as travel restrictions and required attendance at pretrial hearings might constitute a seizure and thereby extend the Amendment's reach toward trial.[109]  This view did not attract support in *Albright* and we need not here further define its limits.  Rather, we adhere to the view that the umbrella of the Fourth Amendment, broad and powerful as it is, casts its protection solely over the pretrial

---

merely because they later offered the fabricated evidence or testified at trial. *Id.* at 276; *Spurlock v. Satterfield*, 167 F.3d 995, 1003-04 (6th Cir. 1999) (finding "untenable" the result that officials who fabricate evidence could later shield themselves from liability simply by presenting false testimony regarding the evidence).

[108] *See Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000).

[109] *Albright*, 510 U.S. at 277-81.

events of a prosecution.  This much is implicit in *Albright*'s insistence that the source of constitutional protection is the particular amendment offering an explicit and extended source of protection against a particular sort of government behavior.[110]

Plainly, the perjury and manufactured evidence that tainted Castellano's arrest also denied him due process when used again at trial to convict him.  It is equally plain that his arrest, even his indictment, did not lead inevitably to his trial and wrongful conviction and the damages flowing therefrom.  Rather, the prosecution of this case relied on the continued cooperation of Sanchez and Fragozo at each of its subsequent phases.  As the Texas Court of Criminal Appeals ultimately held, without their testimony, there was insufficient evidence to convict.  And while Castellano may recover for all injury suffered by its violation, the Fourth Amendment will not support his damages arising from events at trial and his wrongful conviction.

We need not say that there could never be such a case to conclude it is not this case.  Without the perjury at trial there would have been no conviction, yet the perjury at trial did not violate the Fourth Amendment.  That is, unless these events at trial are somehow found to be a violation of Castellano's Fourth Amendment rights, there is no constitutional footing for a claim seeking recovery for damages arising from the trial and wrongful

---

[110] *Id.* at 273.

conviction, as opposed to his arrest and pretrial detention, given the dismissal of all but Fourth Amendment claims.

It is true that the charge refers to a denial of due process despite the pretrial dismissal of all but the Fourth Amendment, but as we have explained, this reference to due process is confined by the jury instruction.

## 8

We have no occasion here to consider afresh the federal common law footing of our insistence that a state criminal proceeding terminate in favor of a federal plaintiff complaining of constitutional deprivations suffered in a state court prosecution, a rule reflecting powerful governmental interests in finality of judgments.[111] Nor do we face the kindred exercise in deciding when such a claim accrues under applicable limitations periods. Justice Scalia's opinion in *Heck v. Humphrey* answers any question of limitations in the overwhelming percentage of cases, including this case. It concludes that no such claim accrues until the conviction has been set aside where, as here, the suit calls the validity of the conviction into play.[112]

The heart of Castellano's claim is that the prosecution obtained his arrest and conviction by use of manufactured evidence and perjured testimony, actions attributable to it because Fragozo

---

[111] *See supra* note 38 and accompanying text.

[112] *See Heck v. Humphrey*, 512 U.S. 477, 484-87 (1994).

acted under color of state law. Castellano's proof directly implicated the validity of his conviction and therefore he could not proceed and limitations could not accrue consistent with the principles of *Heck* until the case was dismissed for insufficient evidence by the state trial court on December 29, 1993, on remand from the Texas Court of Criminal Appeals. This suit followed nine months later.[113] Although the parties sparred in the trial court over the general applicable period of limitations and the specific effect of an amended pleading, the parties make no contention here that the trial court's holding that the federal claims were not barred by limitations was in error in either respect.

V

We are persuaded that the judgment must be reversed and the case should be remanded for a new trial of Castellano's claims under the Fourth and Fourteenth Amendments. Defendants are correct that this verdict cannot stand resting solely on the Fourth Amendment for the reason that the award of damages does not distinguish between trial and pretrial events. On remand the district court will grant leave to amend to all parties to conform their claims and defenses to this ruling.

It is suggested that Castellano should not be able to pursue any claims under the Fourteenth Amendment in that the magistrate

---

[113] *Heck* was decided three months before this suit was filed.

43

judge dismissed them before trial and Castellano filed no cross-appeal. It is settled that an appellee may urge any ground available in support of a judgment even if that ground was earlier and erroneously rejected by the trial court.[114] Castellano has attempted to salvage his verdict, as put at oral argument, on the basis that, contrary to the ruling of the magistrate judge, he did state a due process claim and it in practical effect was before the jury. While we have rejected this contention, it is quite plain that to make it requires no cross-appeal. Castellano does not attempt to expand his rights under the judgment by urging that it can be sustained under the Fourteenth Amendment despite the ruling of the trial court.

There remains the question of whether Castellano should also be allowed to plead a state claim of malicious prosecution. The argument is that Castellano should be allowed to separate his federal and state claims resting jurisdiction over the state claims upon 28 U.S.C. § 1367. We are keenly aware that our insistence upon disentangling federal and state law may appear to be no more than a message to the bar about pleading – clearly state separately your state and federal claims. Yet, although jury trials of cases with both constitutional and supplemental state claims may be

---

[114] *See United States v. Hill*, 42 F.3d 914, 917 n.8 (5th Cir. 1995); *Hoyt R. Matise Co. v. Zurn*, 754 F.2d 560, 565 n.5 (5th Cir. 1985); *City of Safety Harbor v. Birchfield*, 529 F.2d 1251, 1254 n.4 (5th Cir. 1976).

little unchanged by our work today, the principle insisted upon here remains important. Our insistence that the anchor of constitutional claims be visible is demanded by our limited jurisdiction, as well as its practical utility in avoiding confusion and dilution of constitutional values. Here Castellano amended his complaint, purposely abandoning his claim under state law. He did so because our case law said the elements of malicious prosecution under state law and under a § 1983 claim were the same. We have pulled that legal rug from all the parties. As we have observed, the magistrate judge's undifferentiated draw upon state law misread *Albright*. But so did this court.

In sum, we reverse the judgment and remand the case for a new trial of Castellano's federal and state claims under the Fourth and Fourteenth Amendments and any state claims he may have. Castellano has not articulated any theory supporting any other claims of lost rights secured under the First, Fifth, and Eighth Amendments.

REVERSED AND REMANDED FOR NEW TRIAL.


E. GRADY JOLLY, Circuit Judge, concurring and dissenting:

I join both Judge Higginbotham and Judge Barksdale in disclaiming the constitutional tort of malicious prosecution. I join Judge Barksdale and Judge Jones in rejecting a remand on the state claim. I join Judge Barksdale in rejecting the due process

45

claim.  I would remand for retrial on whatever remains of the Fourth Amendment claims.

EDITH H. JONES, Circuit Judge, with whom SMITH, CLEMENT, and PRADO, Circuit Judges, join, concurring and dissenting:

Like Judge Barksdale, I applaud the court's decision to jettison its mischievous and unfounded theory constitutionalizing the tort of malicious prosecution. This result is overdue. See Brummett v. Camble, 946 F.2d 1178 (5th Cir. 1991); Kerr v. Lyford, 171 F.3d 330, 342 (5th Cir. 1999) (Jones, J., concurring); Gordy v. Burns, 294 F.3d 722 (5th Cir. 2002). While I largely agree with Judge Higginbotham's discussion of this point, I do not subscribe to the majority's broad remand order.

In particular, the majority purports to allow Castellano to retry state law claims against the two remaining appellants. This is wrong for two reasons. As Judge Barksdale notes, Castellano did not appeal from the magistrate judge order consolidating his state law malicious prosecution claim into a § 1983 claim. Moreover, Castellano has clearly disavowed a state law claim as recently as in his response to the petition for rehearing en banc. The disavowal turns on quirks of state law rather than on this court's constitutional about-face.[115] The

---

[115]A judgment or settlement of a Texas Tort Claims Act case involving a government employer bars the continuation of an action or judgment against an employee of that department "whose act or omission gave rise to the claim." TEXAS CIVIL PRACTICE & REMEDIES CODE § 101.106; Thomas v. Oldham, 895 S.W.2d 352, 355-57 (Tex. 1995); see also Owens v. Medrano, 915 S.W.2d 214 (Tex. App. - Corpus Christi 1996, writ den'd.) (judgment against City of San Benito on claims including one for malicious prosecution bars suit against

majority opinion continues a troublesome trend in this court's recent en banc decisions of deviating from normal standards of appellate practice. See, e.g., United States v. Southland Mgmt. Corp., 326 F.3d 669 (5th Cir. 2003) (en banc) (Jones, J., concurring); Coggin v. Longview Indep. Sch. Dist., 337 F.3d 459 (5th Cir. 2003) (en banc) (Jones, J., dissenting). I dissent from this apparently unnecessary remand.[116]

On the other hand, I cannot agree with Judge Barksdale's argument that Castellano waived any possible constitutional claim by his trial court pleadings. At every step of the litigation, he conscientiously attempted to conform to this court's decisions and to accomplish the ultimately impossible task of harmonizing our case law with that of the Supreme Court. Because this court changed the game technically on Castellano, he should be allowed to retry his claim as one for violation of procedural due process based on the appellants' fabrication of evidence against him.[117] Judge Barksdale also powerfully argues that because Texas law affords Castellano an adequate state remedy in a malicious

---

its police officers on same claim); Brand v. Savage, 920 S.W.2d 672, 674-75 (Tex. App. - Houston [1st Dist.] 1995).

[116] I also dissent from allowing Castellano on remand to try a Fourth Amendment claim properly limited, in events and damages, to pretrial events. He never sought such limited relief in the trial court. Awarding it here is, as Judge Barksdale says, impermissibly lawyering the case for Castellano.

[117] Whether this claim will survive a defense based on the appellants' absolute witness immunity has not been briefed and remains open on remand.

prosecution claim, the <u>Parratt</u> doctrine withholds a constitutional remedy.  While this position may prove correct, we have no post-<u>Parratt</u> guidance on it from the Supreme Court, and several courts have allowed claims like Castellano's to proceed without mention of <u>Parratt</u>.   <u>See</u>, <u>e.g.</u>, <u>Newsome v. McCabe</u>, 256 F.3d 747 (7th Cir. 2001); <u>Jean v. Collins</u>, 221 F.3d 656 (4th Cir. 2000) (en banc); <u>Brady v. Dill</u>, 187 F.3d 104, 114 (1st Cir. 1999); <u>McMillian v. Johnson</u>, 88 F.3d 1554, 1566-70, on reh., 101 F.3d 1363 (11th Cir. 1996); <u>Taylor v. Waters</u>, 81 F.3d 429, 436 n.5 (4th Cir. 1996); <u>Jones v. City of Chicago</u>, 856 F.2d 985, 984 (7th Cir. 1988); <u>Geter v. Fortenberry</u>, 849 F.2d 1550, 1559 (5th Cir. 1988).  For now, I would side with the other appellate courts and concur in this portion of the majority's remand.

RHESA HAWKINS BARKSDALE, Circuit Judge, with whom EMILIO M. GARZA, Circuit Judge, joins, concurring in part and dissenting in part:

As is true of many well meaning, attempted solutions to long-standing, significant problems, the majority opinion offers good news and bad. The good is our finally proscribing a claim under 42 U.S.C. § 1983 for malicious prosecution. The bad comes in two doses: substituted for the freshly minted proscription is an erroneous new § 1983 claim for a due process violation; and this action is being remanded for a new, open-ended trial not only on that new claim but on others as well. This double-barrelled blast of bad news is compounded by Castellano's never having requested on appeal any of the relief provided him so generously, albeit so erroneously, by the majority *sua sponte*. In sum, while I concur fully in the good news, I must respectfully dissent from the bad.

The starting point for the new § 1983 claim's being erroneous is the maxim "Ubi jus, ibi remedium" — "Where there is a right, there is a remedy". *See, e.g.,* **Texas & P. R. Co. v. Rigsby**, 241 U.S. 33, 40 (1916). Our federal system counterpoint is: "Where there is a right, there may not be a federal law remedy". Restated, it may be that the remedy must be through state law. This reflects, among other things, the limited powers granted by

50

our federal constitution, the concomitant limited role of federal courts, and the proper balance between state and federal law.

Accordingly, it is indeed passing strange that, on the one hand, the majority properly prohibits pursuing a state law malicious prosecution claim under § 1983, while, on the other, it improperly creates, *sua sponte* no less, a new federal law remedy to be pursued under § 1983: a witness' pre-trial evidence fabrication and perjury at trial equals denial of Fourteenth Amendment due process. (The majority does not state, however, whether the denial is "substantive" or "procedural"; as discussed *infra*, that distinction is a critical factor.) It is even more strange that the majority creates this new remedy in the face of the crystal clear limiting signal in **Albright v. Oliver**, 510 U.S. 266 (1994) (holding no claim under § 1983 for malicious prosecution based on asserted Fourteenth Amendment substantive due process right to no prosecution without probable cause), especially the concurrence by Justice Kennedy, **id.** at 281. No authority need be cited for the rule that federal courts should avoid constitutional issues if possible, yet the majority goes out of its way, *sua sponte*, to create this new remedy.

On top of all this, the majority remands, *sua sponte*, for a new trial on this new remedy and several other issues. In other words, on appeal, Castellano has *not* sought any of this relief. Under our long established rules of appellate procedure, this

51

failure alone precludes the majority's *sua sponte* remedy-creation and remand.

Consistent with my dissent from the vacated panel opinion, I concur in the holding that malicious prosecution may not be pursued through § 1983. *See* **Castellano v. Fragozo**, 311 F.3d 689, 712 (5th Cir. 2002) (Barksdale, J., dissenting), *vacated by* 321 F.3d 1203 (5th Cir. 2003); **Kerr v. Lyford**, 171 F.3d 330, 342 (5th Cir. 1999) (Jones, J., concurring). This was the sole reason for en banc review. Most regrettably, new, unbriefed issues have been used to diminish, if not swallow, this new holding. Again, the majority has confected, *sua sponte*, a new § 1983 due process claim to replace the now torpedoed § 1983 malicious prosecution claim. Again, to make matters even worse, it remands, *sua sponte*, for an open-ended new trial on this and other issues.

Accordingly, I must respectfully dissent in part. The majority erred in establishing this new § 1983 claim. And, again, in order to establish it and to remand for the new trial on it and other claims, the majority turned its back on long-standing rules of appellate procedure. There is no justification for creating this new § 1983 claim and remanding to allow Castellano yet another round of litigation, despite his repeated failures at trial *and* on appeal to raise the very issues the majority now allows him belatedly to try on remand. We are not a court of original error;

52

yet that is the role played by the majority. It has turned the trial and appeal process on its head.

I.

At this stage, it is critical to appreciate that only two defendants remain in this action: Fragozo, a police officer who was a part-time security guard for Castellano; and Sanchez, who was employed by Castellano. Fragozo and Sanchez are linked in various ways, including alleged fabrication of evidence prior to, and alleged perjury at, Castellano's criminal trial. Fragozo is the requisite "state actor" for § 1983 purposes.

The following defendants no longer remain in this action; the law of the case bars Castellano from bringing any of them back in on remand. Dismissed were: the County of Bexar, Texas; its district attorney's office; its prosecutor; the City of San Antonio, Texas, for which Fragozo was a police officer; and Alfred Castro, an arson investigator for that city's fire department. Immediately after removal to federal court, the county, the district attorney's office, and the prosecutor were dismissed on the basis of prosecutorial immunity. At trial, each of the then remaining four defendants moved for judgment as a matter of law, with that relief being granted the city; and, although the jury returned a verdict against Fragozo and Sanchez, it did not find Castro liable. In sum, of the original seven defendants, only two remain.

Castellano did not cross-appeal the dismissal of these five defendants. Again, the law of the case bars him from bringing any of them back in on remand. Again, only Fragozo and Sanchez remain. In conjunction with those two remaining defendants, the majority opinion contains several errors and omissions related to the procedural history of this action which demonstrate, in part, why the new § 1983 claim and remand are improper.

First, Castellano's third amended complaint presented § 1983 claims under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. According to the majority, all but the Fourth Amendment claim were dismissed. **Maj. Opn.** at 8, 31, and 42. Instead, all but the Fourth and First Amendment claims were dismissed. Castellano abandoned the latter.

According to the majority, Castellano, by amendment to his complaint, abandoned his state law malicious prosecution claim. **Maj. Opn.** at 2 and 45. Instead, over Castellano's objection, the magistrate judge merged that state law claim with Castellano's § 1983 Fourth Amendment claim.

This case was tried on Castellano's now proscribed § 1983 malicious prosecution claim; a quite substantial jury verdict resulted. But, as noted, that verdict was against only two individuals. When they appealed, Castellano did *not* cross-appeal any of his numerous dismissed claims (*i.e.*, § 1983 claims concerning the Fifth, Sixth, Eighth, and Fourteenth Amendments); or

54

the consolidation of his Fourth Amendment claim with his state law malicious prosecution claim; or the dismissal of the other defendants, such as the city.  Accordingly, the only issue on appeal – including before our en banc court – was the jury's malicious prosecution verdict against Sanchez (Castellano's former employee) and Fragozo (the policeman who had worked for Castellano as a part time security guard and was linked to Sanchez).

Castellano was successful before the panel.  At rehearing en banc, he provided no new briefing, electing to rely on his panel brief.  As discussed *infra*, the majority states that, although Castellano did not cross-appeal, he nevertheless urged, at some point on appeal, affirmation of the jury's malicious prosecution verdict on the separate basis of due process.  This is simply not correct.  And, although the majority does *not* suggest Castellano urged affirmation on the basis of other constitutional and state law claims, it nevertheless remands for a new trial with respect to those claims as well.

## II.

The majority remands for a new trial on the following:  its new Fourteenth Amendment due process claim (again, as discussed *infra*, it does not distinguish between "substantive" and "procedural"); a Fourth Amendment claim; a state malicious prosecution claim; and "any other" claim under state law when, on

55

remand, Castellano amends his complaint for the fourth time.  I would not allow a new trial on any of these.

A.

The new § 1983 due process claim confected by the majority fails on two bases.  First, the issue was never presented on appeal. Second, it is barred by the **Parratt** doctrine.

1.

Our prudential appellate rules preclude us from entertaining a Fourteenth Amendment due process claim of any stripe.  This is especially true because it is a constitutional issue; one we should, and can properly, avoid.  In district court, Castellano pleaded a *procedural* due process claim, which was dismissed along with his Fifth, Sixth, and Eighth Amendment claims.  Castellano prevailed at a jury trial on another basis (malicious prosecution) against only two of seven defendants.

When those two defendants appealed, Castellano elected not to raise by cross-appeal (*or otherwise*) the dismissal of any of these claims, including his Fourteenth Amendment due process claim (again, he had abandoned his First Amendment claim).  In general, even  without filing a cross-appeal, an appellee can still present an issue on appeal that does not seek to modify the judgment; in other words, he must cross-appeal only when he seeks to alter it. *E.g.,* **Kelly v. Foti**, 77 F.3d 819, 822 (5th Cir. 1996).  But, obviously, even if a cross-appeal is not required to present an

56

issue, the appellee must still present it on appeal if he wants it considered. *E.g., United States v. Hill*, 42 F.3d 914, 917 n.8 (5th Cir.), *cert. denied*, 516 U.S. 843 (1995). Castellano did neither.

The majority holds, based upon an extremely thin reed, that Castellano presented the new Fourteenth Amendment due process claim, thereby allowing our court to consider it: "Castellano has attempted to *salvage* his verdict, *as put at oral argument*, on the basis that contrary to the ruling of the magistrate judge he did state a due process claim and it in practical effect was before the jury". **Maj. Opn.** at 44 (emphasis added). Generally, of course, our court does not consider issues raised for the first time at oral argument – most especially at en banc oral argument. *E.g., Vargas v. Lee*, 317 F.3d 498, 503 n.6 (5th Cir. 2003). Although Castellano *did plead* a procedural due process claim in district court, he did *not* present a due process claim at any point on appeal — not in his panel brief, not in his en banc brief (which merely adopted the panel brief), and not even at en banc oral argument.

This claim may not be considered for three reasons: (1) at en banc oral argument, Castellano never urged this court to affirm on due process grounds — procedural or otherwise; (2) in his panel and en banc briefs, he never urged affirmance on such grounds; and (3) at issue is a jury verdict for malicious prosecution, to which the

57

cross-appeal exception relied on by the majority, discussed *infra*, does not apply.

a.

Even assuming we should consider an issue presented for the first time at en banc oral argument, I am puzzled by the majority's insistence that, at that argument, Castellano urged affirmation on the basis of due process. Castellano never did so; in fact, on several instances, he refused to make such a request, even when repeatedly pointed in that direction by our court.

There were several procedural due process questions asked Castellano's counsel by several judges. Most notably, immediately after a colloquy over whether procedural, instead of substantive, due process had been left open by **Albright** (Castellano presumed, as he has since his first due process claim in district court, that only procedural due process was available), another judge: (1) provided a lengthy description of the procedural due process claim in the context of perjured testimony and an unfair trial; (2) identified the **Brady v. Maryland**, 373 U.S. 83 (1963), line of cases; and (3) asked Castellano's counsel what sort of argument he would make under this legal theory in support of the judgment. To his credit, because he had never presented the issue, Castellano's counsel responded: "Your honor, I'm not sure I can answer that question today, but I would certainly welcome the opportunity to brief the issue fully if the court would so request". Castellano

58

did *not* then urge, just as he had not previously urged, our court to affirm on the basis of a due process violation. This was confirmed by the fact that he was not prepared to discuss the point and did not attempt to wing it at en banc oral argument.

b.

Nowhere in his panel or en banc briefs does Castellano request this court to affirm on the basis of a § 1983 due process claim. One issue raised by defendants' appeal was the claimed reversible error caused by the quite erroneous inclusion of the term "due process" in the malicious prosecution jury instruction. But Castellano never contended on appeal that the inclusion of this term was a *correct* statement of the law or that our court should affirm on due process grounds.

In fact, Castellano took the opposite position. In claiming in his panel brief that there was no error in the instructions – certainly not reversible error – Castellano was saying that the erroneous inclusion of the term "due process" in the instruction did not affect the trial's outcome. He was *not* asserting that our court should affirm the judgment *because* procedural due process so requires, or even that the jury reached its verdict on that basis. To the contrary, he was maintaining that we should affirm *in spite of* the erroneous inclusion of the words "due process" in the instruction. Neither of Castellano's briefs (panel or en banc)

59

includes a contention that this court should affirm because his due process rights were violated.

c.

Even if Castellano had urged affirmation based on due process grounds, he would have had to cross-appeal in order to do so; the exception to the cross-appeal rule simply does not apply in this instance. The majority states: "It is settled that an appellee may urge any ground available in support of a judgment even if that ground was earlier and erroneously rejected by the *trial court*". **Maj. Opn.** at 44 (emphasis added; citing ***Hill***, 42 F.3d at 917 n.8; ***Hoyt R. Matise Co. v. Zurn***, 754 F.2d 560, 565 n.5 (5th Cir. 1985); ***City of Safety Harbor v. Birchfield***, 529 F.2d 1251, 1254 n.4 (5th Cir. 1976)). For some instances (not so here), this is a correct statement of the rule. Here, however, the majority mistakenly stretches this rule far beyond its intended scope. Again, our court is *not affirming* a judgment; instead, we are *vacating* a judgment premised on a jury's verdict based on a malicious prosecution, *not a due process*, claim. Again, the exception to the cross-appeal rule only applies where the appellee urges affirmation on the basis of a claim rejected by the district court; Castellano did not do so. He was quite satisfied with, and clung tenaciously to, his judgment based on malicious prosecution.

An examination of the cases relied upon by the majority demonstrates the exception's proper application. In ***Hill***, on

60

defendant's appeal from the sentence imposed following his guilty plea, we allowed the Government to urge affirmation on the basis of a statute that had been rejected by the "district court's ruling". The judgment was affirmed. 42 F.3d at 917 n.8. In **Zurn**, the appellee maintained that the record provided an alternative ground to support the district court's bench trial decision. Our court held an appellee may take the position on appeal, without filing a cross-appeal, that the record supports "the court's judgment". 754 F.2d at 565 n.5. Likewise, our court held in **Birchfield** that the district court's statement, upon dismissing the complaint on two grounds, to the effect that defendant's other contentions were inappropriate for determination on a motion to dismiss, did not require a cross-appeal in order to assert those other contentions on appeal. 529 F.2d at 1254 n.4. None of these cases involves a jury verdict.

To contend that a trial judge's ruling on an issue was erroneous and that we should therefore affirm, without a cross-appeal, on that basis may, in some instances (not so here) be correct. That is not the situation at hand. Castellano has failed to follow *any* of our appellate rules with respect to the due process claim he presented *only* in district court; we are not permitted to consider it.

2.

Assuming *arguendo* that, on appeal, Castellano did properly present a due process claim, it is barred by the **Parratt** doctrine. **Parratt v. Taylor**, 451 U.S. 527 (1981), *overruled in part by* **Daniels v. Williams**, 474 U.S. 327 (1986), held: where state law provides an adequate post-deprivation remedy, the plaintiff is barred from claiming, through § 1983, a procedural due process violation. This prohibition, however, does not extend to claimed violations of recognized substantive rights incorporated in the Fourteenth Amendment. *E.g.,* **Augustine v. Doe**, 740 F.2d 322 (5th Cir. 1984) (holding **Parratt** inapplicable to claimed violation of recognized Fourth Amendment substantive right, but remanding another claim to determine whether state actors' conduct was "official policy", or instead "random and unauthorized" and therefore a procedural due process violation — a claim barred by **Parratt**). For this reason, understanding the distinction between procedural and substantive due process, and determining which claim Castellano pleaded in district court, is most essential. Unfortunately, the majority brushes this aside in its relentless effort to provide Castellano a remedy – any remedy – on remand.

Along this line, it is again imperative to recognize the defendants who are, and are no longer, in this action. The county, the district attorney's office, the prosecutor, the city, and its arson investigator are out; only Fragozo and Sanchez remain. In

short, Fragozo is the only "state actor" and an extremely tenuous one at that.

As discussed below, in district court, Castellano pleaded a *procedural* due process violation. Indeed, the Supreme Court has only characterized the type of conduct Castellano alleges – fabricated evidence and perjured testimony – as violative of procedural, *not substantive*, due process. Carving out a new, stand-alone *substantive* right under the Fourteenth Amendment, one that was not pleaded by Castellano in district court and has *never* been articulated by the Supreme Court, is not warranted, to say the least. This is especially true where the alleged conduct by the state actor (Fragozo, the police officer and part time security guard for Castellano) is of the "random and unauthorized" type pinpointed by **Parratt** as being violative of *procedural* due process. **Parratt***,* 451 U.S. at 541.

In district court, Castellano pleaded a procedural, *not substantive*, due process violation. In his third amended complaint, he claimed that he was deprived of his right to due process and a fair trial because the defendant witnesses allegedly fabricated evidence and gave perjured testimony. Defendants were of the view that, post-**Albright**, a § 1983 claim for substantive due process was prohibited. Therefore, they contended in their summary judgment motions that Castellano had pleaded a proscribed substantive due process claim that should be dismissed.

63

In response, Castellano seized every opportunity to clarify his position, *denying* that his claim was for a violation of *substantive* due process; in one instance, he called defendants' characterization "disingenuous". Instead, Castellano carefully explained that, because **Albright** apparently did not allow a stand-alone substantive due process claim, he was not asserting one.

Whether this interpretation of **Albright** is accurate is irrelevant. For the purpose of deciding what claims Castellano presented in district court, we need look no further than to his own interpretation. The only *substantive* constitutional violations Castellano claimed were under the First, Fourth, Fifth, Sixth, and Eighth Amendments, made applicable through the Fourteenth Amendment. And, for a separate Fourteenth Amendment claim, he asserted violation of his right to *procedural* due process and was deliberate in explaining to the magistrate judge that he was *not* claiming a violation of *substantive* due process.

Pursuant to **Parratt**, the existence of an available independent and adequate state remedy precludes Castellano's procedural due process claim. The only exception is when the plaintiff "pleads and proves" that available state remedies are inadequate to redress the wrong. *E.g., **Copeland v. Machulis***, 57 F.3d 476, 479 (6th Cir. 1995). Castellano did not do so; on the contrary, he pushed for relief through an independent state malicious prosecution claim,

64

apparently appreciating its "adequacy" enough to object when the magistrate judge consolidated it with his Fourth Amendment claim.

Castellano's pleadings aside, and as noted, the Supreme Court has only characterized conduct of the type alleged by Castellano as a violation of procedural due process. The majority correctly cites *Mooney v. Holohan*, 294 U.S. 103 (1935), for the proposition that fabricated evidence and perjured testimony are violative of due process. **Maj. Opn.** at 39. But as Chief Justice Rehnquist explained in the *Albright* plurality opinion, such activities are properly understood, under the *Mooney*, *Brady* line of cases, to implicate procedural, *not substantive,* due process:

> *Winship* [397 U.S. 358 (1970)] undoubtedly rejected the notion that all of the required incidents of a fundamentally fair trial were to be found in the provisions of the Bill of Rights; but it did so as a matter of *procedural* due process: "This notion [that the government must prove the elements of a criminal case beyond a reasonable doubt] – basic in our law and rightly one of the boasts of a free society – is a requirement and a safeguard of due process of law in the historic, *procedural* content of 'due process.'" *Similarly*, other cases relied on by the dissent, including *Mooney* ... [and] *Brady* ... were accurately described in [*United States v. Agurs*, 427 U.S. 97 (1976)] as "dealing with the defendant's right to a fair trial mandated by the Due Process Clause of the Fifth Amendment to the Constitution."

*Albright*, 510 U.S. at 273 n.6 (citations omitted; emphasis added).

In fact, the conduct described in some of these cases, *prosecutorial* — not witness — fabrication of evidence and its

65

knowing use of perjured testimony, for example, is much more fundamental to the fairness of a trial than, as with Fragozo and Sanchez, a witness' independent fabrication of evidence and perjury — conduct not linked to the prosecutor's conduct. Nevertheless, the Supreme Court characterized such prosecutorial conduct as *procedural*. Indeed, this is why, for deciding whether there is a procedural due process violation, **Parratt** and its progeny consider whether conduct was "random and unauthorized" (invoking procedural due process), or instead part of an established state procedure that is fundamentally flawed. *See* **Parratt**, 451 U.S. at 543; *see also* **Copeland**, 57 F.3d at 479. Here, the former, not the latter, factor is in play concerning the two remaining defendants.

This procedural/substantive distinction is indispensable to § 1983 analysis because, as discussed, **Parratt** precludes § 1983 claims predicated on procedural due process where there is an adequate state remedy, but does not preclude such claims predicated on the violation of substantive rights that have been incorporated into the Fourteenth Amendment. But even if we assume *arguendo* that, in district court, Castellano did claim a violation of substantive due process (an assumption quite forcefully rejected by Castellano), it is not at all clear that a witness' fabricating evidence and commiting perjury at trial is a sufficient basis for a substantive due process violation.

66

As noted, courts have permitted § 1983 recovery for *recognized* substantive violations, despite the availability of state law remedies. *See, e.g.,* **O'Quinn v. Manuel**, 773 F.2d 605, 608 (5th Cir. 1985) (concluding the **Parratt** doctrine, while barring § 1983 claim for procedural due process, does not bar one for claimed violation of the "substantive *eighth* amendment right to be free from cruel and unusual punishment") (emphasis added); **Augustine**, 740 F.2d at 327 (holding **Parratt** doctrine does not bar § 1983 claim for violation of the "substantive [*Fourth* Amendment] right protected by the Constitution against infringement by state governments"). But I find no cases, and the majority cites none, where a court has *recognized* a substantive due process violation for a witness' evidence fabrication and perjury. And some circuits have interpreted **Albright** as precluding all § 1983 claims that are predicated on a no more specific constitutional violation than substantive notions of due process of law (but as allowing procedural due process or articulated constitutional provisions such as the Fourth Amendment). *See, e.g.,* **Merkle v. Upper Dublin School Dist.**, 211 F.3d 782, 791 (3d Cir. 2000).

In an apparent effort to side step the **Parratt** bar, the majority refers in its opinion only to "due process" (due process *simpliciter*?). *See, e.g.,* **Maj. Opn.** at 2-3, 35, and 38. But, to truly escape **Parratt**, the majority must mean *substantive* due

67

process.  The **Parratt** doctrine precludes simply blending procedural and substantive due process; instead, it requires identifying the precise nature of the claimed constitutional violation.

The conduct about which Castellano complained in district court constitutes a procedural due process violation for which state law provides an adequate post-deprivation remedy.  Remember, Castellano is not seeking a new criminal trial because his trial was fundamentally unfair.  The state courts provided habeas relief, and the State did not re-prosecute.  Instead, Castellano is seeking damages for alleged wrongs – now only by Sanchez and Fragozo – that occurred before and during his criminal trial.  In such instances, the state post-deprivation remedies are the "best the state can do" to allow injured individuals recovery after injury has occurred. **Augustine**, 740 F.2d at 327.  Such state remedies are sufficient to address due process violations that are "random and unauthorized" and therefore violate procedural due process.  **Id**.

The majority is attempting to treat conduct the Supreme Court has already characterized as potentially violative of procedural due process as though it is also violative of a recognized substantive constitutional right (as with **O'Quinn** and the Eighth Amendment or **Augustine** and the Fourth).  In so doing, it apparently hopes that Castellano's § 1983 claim will escape the effect of **Parratt** and somehow become  "supplementary to [rather than precluded by] state remedies for constitutional injury".  **Maj. Opn.**

68

at 37.  In support, the majority cites **Monroe v. Pape**, 365 U.S. 167 (1961).  *Id.*  But that case, involving police officers breaking into and ransacking a home, concerned the recognized substantive Fourth Amendment right made applicable by the due process clause of the Fourteenth Amendment.  The majority attempts to slip past the **Parratt** bar on this same ground.  Effectively, the majority can only be considering Castellano's claim as some sort of substantive due process claim, but has avoided the damning label.

The alleged conduct by Sanchez and Fragozo is precisely the type of "random" and "unpredictable" activity that **Parratt** expressly prohibits being remedied through a claim under § 1983 – this conduct relates to procedural due process and there are adequate state remedies.  Again, **Parratt** distinguishes between the "random and unauthorized (and hence unpredictable) conduct of a state actor" (such as is at issue here) and "conduct that the state can contain and direct by instituting procedural safeguards".  **Augustine**, 740 F.2d at 327.  The availability of a post-deprivation state tort remedy does satisfy due process in the former instance, but not in the latter.  *Id.*  Again, the conduct at issue here — alleged witness fabrication of evidence and perjury — is precisely the sort of "random and unauthorized" conduct to which **Parratt** applies; therefore, the existence of adequate post-deprivation state remedies, such as through a malicious prosecution claim, bars a § 1983 procedural due process claim.

Relying almost exclusively on Justice Kennedy's *Albright* concurrence, the majority concludes that "the *Parratt* doctrine is [not] applicable to Castellano's claim that the manufacturing of evidence and use of perjured testimony at trial ... denied him due process". **Maj. Opn.** at 35. The majority first claims that Justice Kennedy warned of the contra-indications of *Parratt*, noting that in some instances federal power ought to be vindicated, rather than rely on state law remedies. This is true; but that is only part of the equation. The majority then refers, by way of example, to *Monroe*'s "reading of § 1983 as supplementary to state remedies for constitutional injury". **Maj. Opn.** at 37. Returning to Justice Kennedy, the majority states that this notion — of § 1983 claims supplementing state remedies — "finds expression in Justice Kennedy's statement that a claim of malicious initiation of criminal proceedings 'differs in kind' from claims that implicate 'fundamental fairness in the determination of guilt at trial'". **Maj. Opn.** at 37-38. The majority then determines that this latter type of claim is one "in which the federal power ought to be vindicated" and is therefore not barred by *Parratt*. *Id.*

As a preliminary matter, Justice Kennedy made a factual distinction between malicious initiation of charges and conduct that occurs during a trial; this was only a factual, chronological distinction. The majority's conclusion is that the distinction Justice Kennedy made between the conduct in Albright's case and in

70

other cases is actually a significant legal decision, identifying the conduct in those other cases as "beyond the reach of **Parratt**". **Maj. Opn.** at 38. Justice Kennedy never made such a conclusion. As noted, Chief Justice Rehnquist, writing for the plurality, characterized these as violations of procedural due process; Justice Kennedy did not challenge that.

That Justice Kennedy walked Albright's conduct through the **Parratt** analysis, but did not do so for other types of conduct (like that at issue here), in *no way* implies that **Parratt** does not apply to the latter. **Albright** did not involve witness evidence fabrication and perjury; accordingly, Justice Kennedy did not address it. But, by walking the conduct at issue here through the steps Justice Kennedy applied in **Albright**, it is clear that **Parratt**'s proscriptions are a perfect fit.

Even assuming, *arguendo*, that Justice Kennedy's factual distinction is meant to imply that there are substantive due process rights in the fundamental fairness of a trial, he does not identify conduct sufficient to invoke them beyond a *prosecutor's* knowing use of perjury (**Mooney**) and the requirement of proving elements of a criminal conviction beyond a reasonable doubt (**Winship**). It is the majority that holds that a *witness'* evidence fabrication and perjury are sufficient to invoke it.

But again, a due process claim can bypass **Parratt** in only *two* ways: (1) the claim is substantive; or (2) it is procedural, but

71

available state remedies are inadequate.  There is no dispute that Castellano has neither pleaded nor proved the inadequacy of state remedies.  Apparently this is why the majority finds it necessary to provide cover for the only possible claim – substantive due process.  But, because Castellano argued to the magistrate judge against construing his claim as substantive, the majority labels it, simply, "due process".

To support bypassing *Parratt*, the majority points to Justice Kennedy's statements that courts have "been cautious in invoking the rule of *Parratt*" and that "[w]e want to leave an avenue open for recourse where we think the federal power ought to be vindicated". **Maj. Opn.** at 37 (quoting *Albright*, 510 U.S. at 284-85 (Kennedy, J., concurring)).  Again, the majority opines that one avenue for vindication is where a witness fabricates evidence or commits perjury;  but, again, Justice Kennedy never says that.  Again, the majority cites language from *earlier* in Justice Kennedy's concurrence, where he made a factual distinction, without elaboration, on the difference between the type of conduct in *Albright* and that in other cases.  *See* *Albright*, 510 U.S. at 283 (Kennedy, J., concurring).  Of particular importance to this action, Justice Kennedy then cautioned, however:

> But the price of our ambivalence over the outer limits of *Parratt* has been its dilution.... The *Parratt* rule has been avoided by attaching a substantive rather than procedural label to due process claims (a distinction that if accepted in this context

72

> would render **Parratt** a dead letter) and by treating claims based on the Due Process Clause as claims based on some other constitutional provision.

**Albright**, 510 U.S. at 285 (Kennedy, J., concurring). (Of course, this is precisely what the majority is doing — trying to characterize the two remaining defendants' conduct as violative of something other than procedural due process, so that the new claim can slip past **Parratt**.) To stem this "dilution", Justice Kennedy offers this compelling guidance:

> These evasions are unjustified given the clarity of the **Parratt** rule: In the ordinary case where an injury has been caused *not by a state law, policy, or procedure, but by a random and unauthorized act that can be remedied by state law*, there is no basis for intervention under § 1983, at least in a suit based on "the Due Process Clause of the Fourteenth Amendment *simpliciter*".

**Id**. (emphasis added). There can be no more accurate description of Castellano's due process claim in district court. (Again, he does not present such a claim on appeal.)

As a final note, the very reason why, in state court, Castellano added federal law claims must not be overlooked. He did so through amended complaints in an apparent effort to avoid state law immunity. Justice Kennedy warned: "The commonsense teaching of **Parratt** is that some questions of property, contract, and tort law are best resolved by state legal systems without resort to the federal courts". **Albright**, 510 U.S. at 284 (Kennedy, J.,

concurring).  He later notes that "[t]he **Parratt** principle respects the delicate balance between state and federal courts and comports with the design of § 1983...."  **Id.**  **Parratt** makes very clear: "Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process".  **Parratt**, 451 U.S. at 544.  In **Parratt**, there was "no contention that the procedures themselves [were] inadequate".  **Id**. at 543.  Nor is there one here.

B.

In his third amended complaint, Castellano added a Fourth Amendment claim.  As noted, the magistrate judge consolidated it with Castellano's original state law malicious prosecution claim.  Although Castellano objected to this rejection of the state law malicious prosecution claim as a separate, stand-alone claim, he never objected to the transformation of the Fourth Amendment claim into a § 1983 malicious prosecution claim.  And, as with his procedural due process claim, he did *not* present the issue on appeal.

We should not remand for a new trial on a Fourth Amendment claim.  At trial and on appeal, despite **Albright**, Castellano repeatedly turned his back on the one claim he had under federal law – the Fourth Amendment.  He was denied trial on a Fourth Amendment

74

claim and a supplemental state malicious prosecution claim; but, he elected not to contest that denial on appeal.

Litigation must come to an end; fairness must be shown both sides.  In my view, it is quite unfair to defendants, especially in the light of what repeatedly took place at trial concerning the Fourth Amendment claim, to afford Castellano yet another opportunity to try such a claim.

C.

As noted, Castellano originally pleaded a state malicious prosecution claim.  As also noted, the majority incorrectly states he "amended his complaint, purposely abandoning [this] claim under state law".  **Maj. Opn.** at 45.  In his original state court complaint, Castellano presented only a malicious prosecution claim.  Following his addition of § 1983 claims (apparently to avoid state law immunity) and the subsequent removal of the action to federal court, the magistrate judge ruled that Castellano's action was based entirely on malicious prosecution in the context of a claim brought pursuant to § 1983.  Castellano's  motion for reconsideration was denied.

The magistrate judge erred in placing the state law claim under § 1983; Castellano identified the error and objected.  But, as noted, he never presented the issue on appeal.  Instead, he contended in our court that the judgment was *correct* (and, by extension, that the consolidation ruling upon which the verdict is

75

based should stand).  Significantly, the majority never suggests Castellano presented this issue on appeal.  Nevertheless, it remands for a new trial to include a malicious prosecution claim.

The majority states that Castellano "purposely abandoned" his state law malicious prosecution claim "because our case law said the elements of malicious prosecution under state law and under a § 1983 claim were the same".  **Maj. Opn.** at 45.  As noted, this is inaccurate; the magistrate judge, not Castellano, merged the claims.  Presumably, the majority, out of sympathy for Castellano, would *still* give him the benefit of this change in our precedent, considering it unfair for Castellano to be burdened by our earlier erroneous precedent.

But Castellano was not so burdened.  He made a specific objection by motion to the consolidation (which was denied).  Thereafter, as noted, he did *not* present the issue on appeal — even though he had every reason to do so.  He was quite aware of both *Albright* and Judge Jones' extremely compelling concurrence in *Kerr*, and had access to the law with respect to this issue in other circuits.  Every factor on which our court now relies in changing the law concerning § 1983 malicious prosecution was either expressly or constructively before Castellano in district court.  Indeed, he considered the magistrate judge's ruling on this issue erroneous.  It was his option, therefore, to present this contention on appeal.

He elected not to do so.  We cannot now pretend that he did.  Nor can we allow him to pursue this claim on remand.

D.

As a final act of lawyering this action for Castellano, the majority also allows him to plead "any [other] state claims he may have" on remand.  **Maj. Opn.** at 45.  This action has become open-ended.  In essence, the majority is starting it anew.  Instead, it should be at an end.

III.

Sympathy for a litigant does not permit us to entertain claims not presented on appeal — most especially, those of constitutional dimension.  It most certainly does not allow us to create, *sua sponte*, a new remedy for that litigant and an erroneous remedy at that. At Castellano's election, only the now-proscribed § 1983 malicious prosecution claim was at issue before our court; the following claims were not:  (1) Fourteenth Amendment due process; (2) Fourth Amendment; (3) state malicious prosecution; and (4) any other state claim Castellano can dream up on remand.  In addition to the new § 1983 due process claim's being violative of ***Parratt***, any relief the majority accords Castellano on these issues greatly exceeds the scope of this appeal and is violative of long established appellate rules to which we require parties to adhere — day in and day out — at their prejudice.

77

Accordingly, although I fully concur in our finally proscribing a claim under § 1983 for malicious prosecution, I must respectfully dissent from both the creation of the new § 1983 due process remedy and the remand of this action for yet another round of litigation. Instead, I would vacate and render for appellants. This is not an unfair result — far from it. It is the result for which Castellano, by his election on appeal, rolled the dice ... and lost.