**James K. WHITTINGTON,
Plaintiff–Appellee**

v.

**Randy J. MAXWELL, individually & in his official capacity as Sheriff of Concordia Parish, Defendant–Appellant.**

**No. 11–30344.**

United States Court of Appeals,
Fifth Circuit.

Dec. 22, 2011.

Mitchel Mark Evans, Ii, Esq., Deridder, LA, for Plaintiff–Appellee.

Timothy R. Richardson, John F. Weeks, II, USRY, Weeks & Matthews, A.P.L.C., New Orleans, LA, for Defendant–Appellant.

Before KING, JOLLY, and WIENER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge: *

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be

Plaintiff–Appellee James K. Whittington brought this lawsuit against four Concordia Parish employees, including Defendant–Appellant Randy J. Maxwell, Sheriff of Concordia Parish, asserting claims under 42 U.S.C. § 1983 for malicious prosecution in violation of his Fourth Amendment rights and retaliation in violation of his First Amendment rights, as well as a state law claim for malicious prosecution. On defendants' motion for summary judgment, the district court denied Maxwell's claim of qualified immunity from the § 1983 claims and denied Maxwell's summary judgment motion regarding the state law malicious prosecution claim. Maxwell now brings an interlocutory appeal seeking review of the district court's denial of his qualified immunity defense. Maxwell also seeks review of the court's refusal to dismiss the state law malicious prosecution claim asserted against him. For the following reasons, we AFFIRM the district court's order denying Maxwell qualified immunity on Whittington's Fourth Amendment claim; and we DISMISS Maxwell's appeal of the court's order denying summary judgment on the state malicious prosecution claim.

## I. Factual and Procedural Background

In 2003, James K. Whittington ("Whittington") entered the race for Sheriff of Concordia Parish, Louisiana, against the incumbent, Sheriff Randy J. Maxwell ("Maxwell"). During the election campaign, Whittington ran many campaign ads in a local newspaper, with some ads describing misconduct that had allegedly taken place at the Concordia Parish Sheriff's Office (the "Sheriff's Office") under Maxwell's control. Particularly, Whittington asserted that Maxwell's Deputy Sheriff,

Jimmy Darden ("Darden"), had been arrested in Mississippi on charges of marijuana possession. After Maxwell disputed this claim, Whittington ran a campaign ad titled "Dope–Gate" that published an arrest ticket that Whittington asserts unequivocally showed that Darden was indeed arrested for possession of marijuana. Whittington contends that these campaign ads caused Maxwell significant embarrassment over his perceived mismanagement of the Sheriff's Office. Maxwell defeated Whittington in the general election and won a run-off election against a different candidate in November 2003.

Approximately six months later, on May 19, 2004, Theresa Berry ("Berry") voluntarily contacted the Sheriff's Office and gave a statement concerning events that she alleged took place between her and Whittington in March 2004. Specifically, Berry claimed that Whittington, with whom she previously had a romantic relationship, harassed her by making multiple telephone calls to her, forcefully removed two rings from her fingers, and failed to return the rings.

On May 20, 2004, arrest warrants were issued for Whittington for the crimes of simple robbery, LA.REV.STAT. ANN. § 14:65; stalking, LA.REV.STAT. ANN. § 14:40.2; and telephone harassment, LA.REV.STAT. ANN. § 14:285. On June 3, 2004, Whittington was arrested on these charges by a member of the Sheriff's Office.

On July 14, 2004, a preliminary hearing was held before Judge Leo Boothe ("Boothe") of the Seventh Judicial District Court for the Parish of Concordia. At the hearing, Berry testified to the March 2004 events described above and two fact witnesses testified during Whittington's presentation of evidence. Boothe determined

published and is not precedent except under the limited circumstances set forth in 5TH CIR.

R. 47.5.4.

that the State had probable cause to arrest Whittington and to detain him subject to bond. Boothe set Whittington's bond at $175,000, and Whittington asserts that this bond amount was unreasonably high, given that he only had one prior misdemeanor conviction. Whittington was unable to post bond, and as a result, he was held for over fifty days in jail, with at least some of that time spent in a jail outside of Concordia Parish. On Whittington's motion to reduce bail, Boothe reduced Whittington's bond to $30,000, enabling Whittington to secure release from jail.

Whittington contends that he learned that Maxwell, Boothe, and John Johnson ("Johnson"), District Attorney for Concordia Parish, had engaged in improper *ex parte* communication regarding Whittington's criminal prosecution. Whittington filed motions to recuse Boothe and Johnson. On September 1, 2006, Judge Kathy Johnson of the Seventh Judicial District Court for the Parish of Concordia conducted an evidentiary hearing on the recusal motions. During the hearing, Judge Johnson noted that Whittington had previously filed an ethics complaint against Boothe and that Johnson had received pressure from Darden to vigorously prosecute the case against Whittington. Furthermore, Judge Johnson stated: "This is a case that draws attention wherein the public can, in fact, question actions that have been taken in this case. This case ... [s]ounds like a case of political vendettaism. There are too many instances where various officials have been contacted about pursuing the case against Mr. Whittington." Judge Johnson granted Whittington's motions to recuse Boothe and District Attorney Johnson.

In September 2007, Whittington filed a motion to quash all charges against him pursuant to La.Code Crim. Proc. Ann. art.

578, as more than two years had passed since the institution of the prosecution. On September 25, 2007, Judge Johnson ordered that the criminal case be dismissed with prejudice, or in the alternative, that the Louisiana Attorney General's Office show cause why the case should not be dismissed with prejudice on October 3, 2007. No appearance was made by the Attorney General's Office on or before October 3, 2007, yet the minute entry of the court shows that the case was dismissed without prejudice.

On September 25, 2008, Whittington filed his complaint against Maxwell, Darden, Johnson, and Boothe, in their individual capacities and in their official capacities as employees of Concordia Parish. Whittington asserted three claims against these defendants, specifically: (1) a 42 U.S.C. § 1983 claim alleging that defendants violated his Fourth Amendment right to be free from malicious prosecution; (2) a § 1983 claim alleging that defendants violated his First Amendment right to complain about perceived malfeasance in office; and (3) a Louisiana state law claim for malicious prosecution.[1] In his complaint, Whittington asserts that he has maintained his innocence throughout the criminal prosecution and contends that Maxwell and Darden manufactured the charges in order to carry out a political vendetta against him for his participation in the 2003 Sheriff election. Whittington seeks compensatory and punitive damages as well as equitable relief and attorney's fees.

On June 10, 2009, 2009 WL 1651535, the court granted Boothe's motion to dismiss all claims asserted against him. On June 2, 2010, the remaining defendants filed a motion for summary judgment, arguing that Whittington failed to make out a claim

---

1. In his complaint, Whittington admits that any claim that he might have had under

§ 1983 for false arrest under the Fourth Amendment is "procedurally time-barred."

for malicious prosecution, and in the alternative, that Johnson was entitled to absolute prosecutorial immunity, that Maxwell and Darden were entitled to qualified immunity, and that Whittington had failed to state a claim against Darden.

On March 31, 2011, the district court ruled on Maxwell, Darden, and Johnson's motion for summary judgment. The court granted defendants' motion for summary judgment in part, dismissing with prejudice all claims against Darden and dismissing with prejudice Whittington's claims against Johnson, in his individual capacity only. However, the court denied the defendants' motion in all other respects, specifically denying Maxwell's defense of qualified immunity to the § 1983 claims and denying summary judgment to Maxwell regarding Whittington's state law malicious prosecution claim.

On April 13, 2011, Maxwell filed an interlocutory appeal seeking our review of the district court's denial of his qualified immunity defense.[2] Additionally, Maxwell seeks our review of the district court's denial of summary judgment regarding the state law malicious prosecution claim, contending that we have pendent appellate jurisdiction to review this claim.

## II. Jurisdiction

■ We must first determine whether we have jurisdiction over Maxwell's appeal. "Although a denial of a defendant's motion for summary judgment is ordinarily not immediately appealable, the Supreme Court has held that the denial of a motion for summary judgment based upon qualified immunity is a collateral order capable of immediate review." *Kinney v. Weaver,* 367 F.3d 337, 346 (5th Cir.2004) (en banc)

(citing *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). "Our jurisdiction is significantly limited, however, for it extends to such appeals only 'to the extent that [the denial of summary judgment] turns on an issue of law.' " *Id.* (citation omitted).

"Where the district court has denied summary judgment on the ground that material issues of fact exist as to the plaintiff's claims, this court lacks jurisdiction to review the court's determination that a genuine fact issue exists." *Freeman v. Gore,* 483 F.3d 404, 410 (5th Cir.2007) (citations omitted). But we do have jurisdiction to "decide whether the district court erred in concluding as a matter of law that officials are not entitled to qualified immunity on a given set of facts." *Kinney,* 367 F.3d at 347. In other words, this court can "review whether any factual dispute found by the district court is material for summary judgment purposes." *Freeman,* 483 F.3d at 410. Thus, contrary to Whittington's assertion, we hold that we do have jurisdiction to address Maxwell's contention on appeal that the district court erred in denying his qualified immunity defense.

■ Next, we must consider whether we have jurisdiction over Maxwell's appeal of the district court's denial of summary judgment to Maxwell regarding the state law malicious prosecution claim. As explained above, the denial of summary judgment is not ordinarily an immediately appealable issue. *See Kinney,* 367 F.3d at 346. However, Maxwell asserts that we have jurisdiction over the state law claim pursuant to pendent appellate jurisdiction.

---

2. We note that we do not have jurisdiction on interlocutory appeal to review claims against Maxwell in his official capacity. *See Roberts v. City of Shreveport,* 397 F.3d 287, 291 (5th Cir.2005) ("[T]he right to interlocutory review does not extend to municipalities or municipal officers sued in their official capacities . . . ."); *see also Jacobs v. W. Feliciana Sheriff's Dep't,* 228 F.3d 388, 392 (5th Cir.2000).

"The Supreme Court has been reluctant to endorse the exercise of pendant [sic] appellate jurisdiction over rulings that, while being related to the denial of qualified immunity, are not themselves independently appealable prior to judgment." *Cantu v. Rocha,* 77 F.3d 795, 805 (5th Cir.1996) (citing *Swint v. Chambers Cnty. Comm'n,* 514 U.S. 35, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995)). "Pendant [sic] appellate jurisdiction is only proper in rare and unique circumstances where a final appealable order is 'inextricably intertwined' with an unappealable order or where review of the unappealable order is necessary to ensure meaningful review of the appealable order." *Thornton v. Gen. Motors Corp.,* 136 F.3d 450, 453 (5th Cir.1998) (citations omitted).

Maxwell contends that the state law claim is "inextricably intertwined" with the § 1983 claims, asserting that all of the claims arise from the same set of facts and that the state law claim is "simply a reassertion of plaintiff's malicious prosecution argument." We do not agree. We find that the state law malicious prosecution claim is neither "inextricably intertwined" with Maxwell's qualified immunity defense nor is our review of the state law claim necessary to ensure meaningful review of the denial of Maxwell's qualified immunity defense. Whether Whittington sufficiently alleged that his constitutional rights were violated by Maxwell and that Maxwell acted in an objectively unreasonable manner in the light of clearly established law are separate issues from whether Whittington established all six elements of a Louisiana malicious prosecution claim for summary judgment purposes. *See Cantu,* 77 F.3d at 805 ("Whether the defendants' conduct was objectively reasonable in light of clearly established law is a separate and narrower issue than whether Cantu adduced sufficient evidence on each element of ... [Cantu's] state law claims to avoid summary judgment."); *see also Gros v. City of* *Grand Prairie,* 209 F.3d 431, 437 (5th Cir.2000) ("But despite the fact that these claims do overlap, they were treated separately by the district court; each has unique elements and relevant facts."). Therefore, we decline to exercise our discretion to review under pendent appellate jurisdiction the district court's denial of summary judgment to Maxwell regarding the state law malicious prosecution claim.

Thus, we conclude that we have jurisdiction only to hear Maxwell's appeal of the district court's denial of Maxwell's qualified immunity defense.

### III. Standard of Review

We have explained that the "standard of review that we apply in an interlocutory appeal asserting qualified immunity differs from the standard employed in most appeals of summary judgment rulings." *Kinney,* 367 F.3d at 347. "[I]n an interlocutory appeal we lack the power to review the district court's decision that a genuine factual dispute exists." *Id.* at 348. In conducting our review of the legal questions presented on appeal, we assume that the factual assertions of the plaintiff are true. *See Freeman,* 483 F.3d at 410; *see also Gonzales v. Dallas Cnty.,* 249 F.3d 406, 411 (5th Cir.2001) ("[O]n interlocutory appeal the public official must be prepared to concede the best view of the facts to the plaintiff and discuss only the legal issues raised by the appeal."). We review de novo the district court's legal conclusions— i.e. its determinations of the materiality of the facts—regarding Maxwell's qualified immunity defense. *See Freeman,* 483 F.3d at 410; *see also Kinney,* 367 F.3d at 349.

### IV. Discussion

*A. Maxwell's Qualified Immunity Defense*

Section 1983 provides a cause of action against an individual who, acting under

color of state law, has deprived a person of a federally protected statutory or constitutional right. 42 U.S.C. § 1983. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). If a defendant asserts qualified immunity, the burden is on the plaintiff to demonstrate that the defendant is not entitled to qualified immunity. *See McClendon v. City of Columbia,* 305 F.3d 314, 323 (5th Cir.2002) (en banc).

We undertake two inquiries in analyzing whether a defendant is entitled to qualified immunity. First, we determine "whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights." *Freeman,* 483 F.3d at 410. If the plaintiff failed to allege a violation of a constitutional right, then the analysis ends. *See id.* at 410–11. Second, if the conduct would amount to a violation of plaintiff's constitutional rights, then we

consider "whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id.* at 411 (citations omitted).[3] "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Tarver v. City of Edna,* 410 F.3d 745, 750 (5th Cir.2005) (citation omitted).

In the present case, Whittington asserts two § 1983 claims against Maxwell. First, Whittington claims that Maxwell violated his Fourth Amendment right to be free from malicious prosecution. Second, Whittington claims that Maxwell violated his First Amendment right to complain about perceived malfeasance in public office. The district court determined on summary judgment that Maxwell was not entitled to qualified immunity on either § 1983 claim. On appeal, Maxwell asserts that the district court erred in denying his qualified immunity defense as to Whittington's Fourth Amendment malicious prosecution claim.[4] Applying the two-step inquiry outlined above, we determine whether Maxwell is entitled to qualified immunity on this claim.

**3.** In *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court mandated that the courts conduct the two-step qualified immunity analysis, with courts first determining whether a plaintiff has alleged a violation of a constitutional right under currently applicable standards. However, in *Pearson,* the Supreme Court overruled *Saucier* and made the two-step qualified immunity analysis discretionary. 555 U.S. at 236, 129 S.Ct. 808. The *Pearson* Court's holding permits courts "to exercise their sound discretion [to] decid[e] which of the two prongs of the qualified immunity analysis should be addressed first." *Id.* This flexibility allows the courts to decline to address the constitutional question at step one when the court determines that qualified immunity is required at step two. *Id.* at 234–36, 129 S.Ct. 808; *see also Morgan v. Swanson,* 659 F.3d 359, 384–85 (5th Cir.2011) (en

banc). However, the *Pearson* Court stated that the two-step analysis "is often beneficial," especially where it is "difficult to decide whether a right is clearly established without deciding precisely what the existing constitutional right happens to be." *Pearson,* 555 U.S. at 236, 129 S.Ct. 808 (citation and internal quotation mark omitted). Here, we exercise our discretion to conduct the two-step qualified immunity analysis.

**4.** In his appellate brief, Maxwell did not adequately argue that the district court erred in denying his qualified immunity defense regarding Whittington's First Amendment claim. Therefore, because this issue was inadequately briefed on appeal, it is waived. *See United States v. Lopez–Velasquez,* 526 F.3d 804, 808 n. 2 (5th Cir.2008) ("Arguments inadequately briefed on appeal are waived.").

### 1. Did Maxwell violate Whittington's constitutional rights?

■ We first determine whether Whittington has alleged a violation of his constitutional rights.[5] In his complaint, Whittington asserts that Maxwell violated his Fourth Amendment right to be free from malicious prosecution. On appeal, Maxwell contends that Whittington's malicious prosecution claim is a freestanding claim and is therefore not cognizable under § 1983.

In *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir.2003) (en banc), we held that "no ... freestanding constitutional right to be free from malicious prosecution exists." *Id.* at 945; *see id.* at 953 ("[C]ausing charges to be filed without probable cause will not without more violate the Constitution. So defined, the assertion of malicious prosecution states no constitutional claim."). We explained, however, that "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example, or other constitutionally secured rights if a case is further pursued." *Id.* at 953. These claims of "lost constitutional rights are for violation of rights locatable in constitutional text, and some such claims may be made under 42 U.S.C. § 1983." *Id.* at 953–54. Therefore, under *Castellano*, "the claimant must allege that officials violated specific constitutional rights in connection with a malicious prosecution." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir.2010) (internal quotation marks omitted) (citing *Castellano*, 352 F.3d at 945); *see also Deville v. Marcan-*

*tel*, 567 F.3d 156, 169 (5th Cir.2009) ("[I]t must be shown that the officials violated specific constitutional rights in connection with a 'malicious prosecution.' ").

Maxwell argues on appeal that Whittington's malicious prosecution claim is a freestanding claim because any claim that Whittington may have had for false arrest under the Fourth Amendment is procedurally time-barred.[6] While we accept Whittington's concession that his claim for false arrest is time-barred, we do not agree with Maxwell's argument that Whittington's malicious prosecution claim is a freestanding claim. False arrest is not the only substantive Fourth Amendment violation that Whittington has alleged. In connection with his malicious prosecution claim, Whittington has alleged a Fourth Amendment claim for an illegal seizure—based on his detention for over fifty days in jail on allegedly fabricated charges. *See Castellano*, 352 F.3d at 953 ("It is equally apparent that additional government acts that may attend the initiation of a criminal charge could give rise to claims of constitutional deprivation."); *cf. Whiting v. Traylor*, 85 F.3d 581, 584 (11th Cir.1996) ("Labeling ... a section 1983 claim as one for a 'malicious prosecution' can be a shorthand way of describing a kind of legitimate section 1983 claim: the kind of claim where the plaintiff, as part of the commencement of a criminal proceeding, has been unlawfully and forcibly restrained in violation of the Fourth Amendment. . . .").

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons ... against unreasonable ... seizures, shall not be violated[.]" U.S.

---

**5.** The district court, in analyzing and denying Maxwell's qualified immunity defense, stated, "At this point, we find no need to conduct an exhaustive analysis of the legal standards applicable to the protection of these [First and Fourth Amendment] rights, in light of evi-

dence concerning Maxwell's position and conduct." On appeal, we analyze whether Whittington did assert a violation of his Fourth Amendment rights.

**6.** *See supra* note 1.

CONST. amend. IV. We have stated that "we adhere to the view that the umbrella of the Fourth Amendment, broad and powerful as it is, casts its protection solely over the pretrial events of a prosecution." *Castellano*, 352 F.3d at 959. Pretrial detention constitutes a "seizure" within the meaning of the Fourth Amendment. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 844, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) ("[A] Fourth Amendment seizure [occurs] . . . when there is a governmental termination of freedom of movement through means intentionally applied.") (internal quotation marks and emphasis omitted); *see also Albright v. Oliver*, 510 U.S. 266, 274, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion) ("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it.").

With regard to pretrial confinement, "[t]he sole issue [under the Fourth Amendment] is whether there is probable cause for detaining the arrested person pending further proceedings." *Gerstein v. Pugh*, 420 U.S. 103, 120, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Prolonged pretrial incarceration without probable cause, as is Whittington's allegation here, constitutes a cognizable deprivation of liberty under the Fourth Amendment.[7]

■ In his complaint, Whittington asserts that Maxwell manufactured the criminal charges against him to carry out a political vendetta against him for his participation in the Sheriff election of 2003. As a result of these allegedly fabricated charges, Whittington was arrested and spent over fifty days in jail, "which confinement was procured by Darden and Maxwell."[8] Whittington asserts that he "has maintained his innocence throughout the entire criminal prosecution" and that Boothe, who was later recused, erred in finding probable cause at the hearing. Further, Whittington alleges that Maxwell had improper *ex parte* contacts with the district attorney and the judge to influence Whittington's prosecution.

In its opinion denying summary judgment to Maxwell, the district court found a genuine issue of fact regarding whether Maxwell "detain[ed] an individual and influence[d] a criminal proceeding for the purposes of fulfilling a political vendetta." Additionally, the court found a genuine

---

**7.** The Supreme Court has indicated that the length of an individual's detention is important in determining whether there is a constitutional violation. *See Gerstein*, 420 U.S. at 114, 95 S.Ct. 854 ("The consequences of *prolonged detention* may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships.") (emphasis added); *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56–57, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), (holding that 48 hours is the presumptive limit for detention without a probable cause determination); *see also Baker v. McCollan*, 443 U.S. 137, 144–45, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (holding that a three-day detention pursuant to a valid arrest warrant did not amount to a constitutional deprivation); *id.* at 145, 99 S.Ct. 2689 ("[D]etention pursuant to a valid warrant but in the face of repeated protests of innocence will *after the lapse of a certain amount of time*" amount to a constitutional violation) (emphasis added). Whittington's detention of over fifty days constitutes a prolonged detention that implicates Fourth Amendment concerns. *Cf. Russo v. City of Bridgeport*, 479 F.3d 196, 209 (2d Cir.2007) ("[T]he 68–day detention . . . plainly was prolonged rather than short and carried constitutional implications.").

**8.** In his complaint, Whittington claims that Maxwell improperly detained him in an out-of-parish jail. In its opinion denying Maxwell's qualified immunity defense, the district court found a genuine factual dispute regarding why Whittington was housed in an out-of-parish jail, as one witness testified that he "would only be confined outside of Concordia Parish to make visitation harder and to punish the individual."

issue of fact regarding whether the criminal proceeding was continued without probable cause. The district court explained that two district attorneys "both questioned at least the continuation of the prosecution on the robbery charge, but Maxwell exerted influence over them in an effort to control the case." The district court found a genuine issue of fact regarding whether Maxwell influenced the district attorney's handling of Whittington's case. The district court also noted that "an issue exists regarding whether the probable cause finding made by Judge Boothe, who was later recused, has any import."

Maxwell contends on appeal that, even if Whittington alleged a Fourth Amendment claim apart from the false arrest, the claim fails because probable cause existed for the arrest and prosecution of Whittington. On appeal, Maxwell points to Berry's statement to the Sheriff's Office that Whittington forcibly removed her rings and harassed her, and Boothe's determination of probable cause at the probable cause hearing. However, as explained above, the district court found genuine issues of fact regarding Maxwell's conduct and regarding whether there was probable cause to detain Whittington. The court also noted that there was an issue regarding Boothe's determination of probable cause, given his later recusal for bias. *See Gerstein*, 420 U.S. at 114, 95 S.Ct. 854 ("When the stakes are this high, [with regard to pretrial detention,] the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty."). As explained above, "in an interlocutory appeal we lack the power to review the district court's decision that a genuine factual dispute exists." *Kinney*, 367 F.3d at 348. Therefore, Maxwell's argument on appeal fails.

Viewing Whittington's factual assertions as true, as we must, we find that Whittington has alleged, in connection with his malicious prosecution claim, a violation of his Fourth Amendment right to be free from illegal detention.

### 2. Did Maxwell act unreasonably in the light of clearly established law?

■ We now turn to the second inquiry in the qualified immunity analysis—whether Maxwell acted in an objectively unreasonable manner in the light of clearly established law. "To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions." *Freeman*, 483 F.3d at 411. Thus, the issue before us is "whether it would have been apparent to a reasonable officer at the time of the alleged violation that [Maxwell's] conduct violated the [Fourth] Amendment." *Kinney*, 367 F.3d at 367.

The right to be free from unreasonable seizures was well established in 2003. In its opinion denying Maxwell's qualified immunity defense, the district court noted that Maxwell, as the Parish's "chief law enforcement officer," "would certainly be aware that under any interpretation of the law, it is improper to detain an individual and influence a criminal proceeding for the purposes of fulfilling a political vendetta." No reasonable police officer could have thought that it was objectively reasonable in the light of clearly established Fourth Amendment law to detain an individual in jail for over fifty days, pursuant to the officer's fabricated charges, so that the officer could fulfill his own personal vendetta against that individual. *Cf. Wagenmann v. Adams*, 829 F.2d 196, 209 (1st Cir.1987) ("No prudent police officer . . .

could have failed to recognize that arrest and imprisonment on the flimsy basis of unsubstantiated hearsay and self-interested rumor would strike a mortal blow at Wagenmann's civil rights.").

In conclusion, we hold that the district court did not err in denying Maxwell's qualified immunity defense to Whittington's Fourth Amendment claim on summary judgment.

## V.  Conclusion

For the foregoing reasons, we AFFIRM the district court's order denying qualified immunity to Maxwell on Whittington's Fourth Amendment claim; and we DISMISS Maxwell's appeal of the court's order denying summary judgment on the state malicious prosecution claim. Maxwell shall bear the costs of this appeal.

AFFIRMED in part; DISMISSED in part.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.